393 So.2d 1216 (1981)
STATE of Louisiana ex rel. Herbert WOMACK
v.
Warden Frank BLACKBURN et al.
No. 67218.
Supreme Court of Louisiana.
January 26, 1981.
Rehearing Denied March 2, 1981.[*]
*1217 George M. Strickler, Jr., Tulane Appellate Advocacy Clinic, New Orleans, for plaintiff-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., J. Kevin McNary, Asst. Dist. Atty., New Orleans, for defendants-respondents.
LABORDE, Justice ad hoc.[*]
A jury convicted Herbert Womack, Jr. of attempted simple burglary, a violation of La.R.S. 14:27; 14:62. Womack was sentenced to serve four and one-half years at hard labor. Subsequently, Womack was adjudged a multiple offender under La.R.S. 15:529.1, the Habitual Offender Law. His original sentence was then vacated and he was resentenced to serve fifty years at hard labor. In a direct appeal to this Court, Womack assigned as error only the alleged unconstitutionality of the Habitual Offender Law. On appeal, Womack's conviction was affirmed. State v. Womack, 332 So.2d 273 (La.1976). In February, 1980, Womack petitioned the district court for habeas corpus relief; Womack's petition was denied without a hearing. He then petitioned this Court for a writ of certiorari alleging two errors in the trial court's proceedings. This Court granted his petition October 6, 1980. Although review was granted on the basis of two assigned errors, defendant in brief now urges only one error. That one assignment challenges the sufficiency of the evidence to support defendant's conviction.

FACTS
At approximately 5:30 A.M. on March 7, 1975, the front and side glass doors of the Finale II lounge, located at the corner of North Rampart and St. Peter Streets in New Orleans, were broken. Herbert Womack, Jr. was arrested near the scene and charged with attempted simple burglary.
At defendant's trial on the merits, the following testimony was adduced. Mary Schlesinger testified that in the early morning hours of March 7, 1975, she was in a French Quarter lounge when she twice heard, in quick succession, the sound of breaking glass. Ms. Schlesinger stated that she was approximately fifteen to twenty feet away when she immediately looked outside and saw defendant standing about two feet from the broken front glass doors of the Finale II. She did not see defendant actually break the glass or try to gain entry into the building. Ms. Schlesinger remained outside for about one-half minute and as she watched, the defendant stood in front of the broken glass door then suddenly fled on foot. Ms. Schlesinger testified that she had known the defendant for two or three years prior to the incident and had seen defendant in the vicinity of the Finale II earlier in the morning of March 7, 1975.
The owner of the Finale II, Carl Morvant, testified that he was also very near the scene that morning. He was in a cafe about a half block away having coffee when Andrew Boudreau rushed in and told him that someone was trying to break into his place. Instantly, Morvant who had stepped outside to receive the news, looked up and saw defendant stand behind a post near the Finale II's front door. Morvant recognized defendant as an occasional customer. Like Ms. Schlesinger, Morvant saw defendant neither break the glass nor try to gain entry into the building. However, Morvant did testify that besides the broken glass, there was additional evidence that one of the doors of the Finale II had been tampered with:
"Q. Was there anything unusual about the door that night?

*1218 A. The glass in the right door was broken out and the door was pulled out. I have a hook at the bottom inside, it is a few inches off the floor, it keeps the door shut and the stop was pulled out, there is a spring there, it must have been pulled out about 4 inches, you can see where it was caught there.
Q. The last time you saw the door, before this time, was it in that condition?
A. Not at all..."
(Tr. pp. 14-15)
A third state witness, Andrew Boudreau, testified that he had parked his car near the Finale II and was locking it when he heard glass breaking. He looked toward the Finale II and saw someone standing behind a post in front of the shattered doors. Boudreau knew Carl Morvant and he also knew Morvant would be having his regular cup of coffee at a nearby cafe. After notifying Morvant of the incident, Boudreau helped him pursue the defendant who, as Morvant and Boudreau approached him, fled on foot. It was during the chase that Boudreau recognized defendant as someone he too had previously known. Boudreau, like the other two witnesses, did not see defendant actually break the glass of or attempt to gain entry into the building.
Morvant and Boudreau chased defendant until they lost him in the Basin Street vicinity. The pair then went to a nearby police station for help.
Officer John Dupre, who was walking in the Basin Street area, spotted a subject emerge from behind some hedges and walk over to a bus stop where he appeared to act as though he was waiting for a bus. Officer Dupre was somewhat suspicious as he knew there were no buses running due to a transit strike. The officer then noticed that the subject fit the description reported about forty-five minutes earlier. Defendant was arrested and advised of his rights. Shortly thereafter, he was identified by Ms. Schlesinger, Morvant and Boudreau.
Defendant took the stand in his own defense. For his part, he claimed that because of a bus strike, he was standing in front of the Finale II waiting to catch a cab. While there, he saw two men running toward him, became frightened and fled. Defendant asserted his innocence and denied breaking the glass or attempting to burglarize the lounge. He further testified that because of ear trouble, he had cotton in both ears and did not hear any glass breaking.

OPINION
In Claim I of his petition, defendant urges that the testimony of the state's witnesses was insufficient to support a conviction of attempted simple burglary since no witness saw defendant actually break the lounge's doors. Defendant claims that all of the state's evidence was circumstantial in nature and was insufficient to exclude every reasonable hypothesis of innocence, as required by R.S. 15:438.[1] In addition, defendant urges that the state had insufficient evidence to show that defendant had specific intent to enter a structure with the intent to commit a felony or any theft therein, an essential element of the offense under R.S. 14:62; 14:27.
Defendant has not previously raised these contentions by motion for new trial or motion for acquittal. This Court has previously denied review to a defendant who appeals a conviction on the grounds that the state failed to introduce sufficient evidence to support a conviction or an essential element of the crime unless the defendant has preserved the issue by motion for new trial on those grounds or by motion for acquittal. Article 5, § 5, Louisiana Constitution; State v. Williams, 354 So.2d 152 (La.1977); State v. Tennant, 352 So.2d 629 (La.1977).
However, in State v. Peoples, 383 So.2d 1006 (La.1980), this Court recently held that it would be patently unfair and a denial of *1219 a defendant's due process rights to refuse to review a complaint that the state failed to present any evidence of the crime charged or an essential element thereof simply because he failed to file a motion for a new trial or filed such a motion and neglected to assert this contention therein. See also State v. Boutte, 384 So.2d 773 (La.1980).
In State v. Boutte, supra, this Court noted that the traditional test in reviewing a defendant's contention that the state failed to prove the crime or an essential element of it had seemingly been broadened by the United States Supreme Court's decision in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In Jackson, supra, the Supreme Court rejected and overruled the previous "no-evidence" criterion for federal habeas review of state convictions (review was precluded where there was "some" evidence of the elements of the crime) and held that federal due process protects an accused against conviction except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt. 99 S.Ct. at 2786. The Supreme Court in Jackson set forth the following test as to whether the record evidence could reasonably support a finding of guilty beyond a reasonable doubt: "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 99 S.Ct. at 2789. This Court's acceptance of the Jackson reasonable doubt standard is now well documented. State v. Morgan, 389 So.2d 364 (La.1980); State v. Harveston, 389 So.2d 63 (La.1980); State v. Hartman, 388 So.2d 688 (La.1980); State v. Byrd, 385 So.2d 248 (La.1980); State v. Landry, 381 So.2d 462 (La.1980); State v. Mathews, 375 So.2d 1165 (La.1979). This Court has heretofore applied Jackson on its direct review of the sufficiency of the evidence to support a conviction. However, Jackson itself began with a collateral attack on the underlying conviction via the federal equivalent of habeas corpus proceedings. Thus, applying Jackson in the present context presents no problems.
Applying Jackson, we find that even though no witness saw defendant actually break the glass doors of the Finale Lounge, the record, as a whole, convinces us that there is sufficient evidence in the record to support a rational trier of fact's returning a guilty verdict of attempted simple burglary beyond a reasonable doubt.
On review, the record must support the element of R.S. 14:62, the simple burglary statute, that defendant committed an unauthorized entry of a structure with the intent to commit a felony or theft therein. Furthermore, R.S. 14:27, the attempt statute, requires that defendant have a specific intent to commit the crime in order to be guilty of attempt.
In summary, the record contains evidence showing that three witnesses who knew each other and who also knew defendant saw defendant standing near a broken glass doortwo of them immediately after they heard the glass break, the third one a very short time later. In addition to defendant's presence at the broken door, two witnesses testified that defendant tried to conceal himself behind a post and then broke out into a run when two people he knew approached him. Defendant was apprehended a short time later in an area nearby. All of these facts could raise the inferences to a reasonable juror that the defendant is the one who broke the window since the evidence shows no one else was around in the area at the time. Also, while an individual's flight does not in and of itself indicate any guilt, State v. Franklin, 353 So.2d 1315 (La.1977), it can be considered as circumstantial evidence that one has committed an offense and it is admissible into evidence as relevant to show consciousness of guilt. State v. Bolton, 354 So.2d 517 (La.1978). We conclude that a reasonable trier of fact could have found that defendant broke the glass door.
Subsequent investigation revealed that in addition to the broken glass, the hook or latch which keeps the door shut was pulled up about four inches. The owner testified *1220 that the last time he observed the latch, it was not in this sprung condition. We conclude that a reasonable trier of fact could have found that defendant tampered with the latch and that the sprung latch on the inside door establishes an unauthorized entry of the lounge.
Since there would be no apparent reason for defendant to tamper with the inside door bolt and break the glass, a rational trier of fact could also find that defendant had the requisite intent necessary for attempted simple burglary.
In light of apparent inconsistencies borne out by the evidence, the jury acted as a reasonable trier of fact in rejecting defendant's exculpating explanation. For example, defendant claimed that because of a bus strike, he was standing in front of the Finale II in order to enhance his chances of catching a cab. Yet, Officer Dupre testified that shortly prior to defendant's arrest, he saw defendant standing at a bus stop acting as though he was waiting for a bus. Another inconsistency surfaced when defendant claimed that despite his close proximity, he did not hear glass breaking because he had cotton in his ears due to ear trouble. Yet, when defendant was arrested a short time later, there was no cotton in either ear. In addition, a barmaid who had seen and spoken with defendant earlier that night, testified that she did not notice cotton in defendant's ears.
We conclude that sufficient evidence exists in the record such that a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of attempted simple burglary beyond a reasonable doubt.
For these reasons assigned, the conviction and sentence are affirmed.
AFFIRMED.
MARCUS, J., concurs in the result.
LEMMON, J., concurs and will assign reasons.
LEMMON, Justice, concurring.
The Peoples decision held that insufficiency of evidence can be raised for the first time on appeal. This decision logically extends Peoples, for if insufficiency can be assigned as error for the first time on appeal, certainly the court can recognize this constitutional defect on its own.[1]
Moreover, substantive due process requires that a defendant's guilt of every element of the offense be proved beyond a reasonable doubt. The present decision properly accords greater ranking to this constitutional requirement than to C.Cr.P. art. 920's statutory mandate that only assigned errors and errors patent shall be considered on appeal.
NOTES
[*] Blanche, J., did not participate in rehearing.
[*] Judges Guidry, Foret and Laborde of the Court of Appeal, Third Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche, and Lemmon.
[1] R.S. 15:438 provides:

"The rule as to circumstantial evidence is: Assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."
[1] This is not to imply that insufficiency of evidence is an error patent, which the court should check for in each case. However, if the error comes to the court's attention, the court should recognize it, because no one should remain in prison if he has been convicted on insufficient evidence.