419 So.2d 858 (1982)
STATE of Louisiana
v.
Christine RAYMO.
No. 81-KA-3151.
Supreme Court of Louisiana.
September 7, 1982.
Rehearing Denied October 15, 1982.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Charles B. Bice, Dist. Atty., Douglas H. Allen, Asst. Dist. Atty., for plaintiff-appellee.
Martin S. Sanders, Jr., Sanders & Castete, Ltd., Winnfield, for defendant-appellant.
DENNIS, Justice.
This case presents the question of whether forgery may be committed without an intent to injure or prejudice the rights of another. Defendant, Christine Raymo, was convicted of attempted forgery, La.R.S. 14:27, 72, and sentenced to nine months in jail. We reverse. One essential element of a forgery prosecution is proof of an intent to defraud, i.e., an intent to injure or prejudice the rights of another. The record is devoid of any evidence from which the jury reasonably could have inferred that the defendant made a false signature with such an intent.
On October 21, 1981, Christine Raymo entered Shirley's Pharmacy in Winnfield, Louisiana and presented to pharmacist Thomas Thompson a prescription form, bearing the signature of Dr. Ratnam B. Nagalla, for forty Seconal capsules, to the order of "Mary T. Hill." After asking how much it would cost to have the prescription *859 filled, Raymo left the pharmacy for the purpose of obtaining more money to pay for the drugs. When she returned, Thompson became suspicious of the signature and format of the prescription and sent a store employee next door to Dr. Nagalla's office to verify its authenticity. Upon the employee's return, Thompson confronted Raymo, telling her that the prescription was an obvious forgery and that he was going to contact the police. Raymo was subsequently arrested and taken to the police station. At the station, she gave a taped statement in which she admitted writing the prescription, signing Dr. Nagalla's name and attempting to use it to secure drugs for her personal use.
Forgery is defined by the criminal code in two ways:
"Forgery is the false making or altering, with intent to defraud, of any signature to, or any part of, any writing purporting to have legal efficacy.
"Issuing or transferring, with intent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute forgery.
"* * *."
La.R.S. 14:72.
An "intent to defraud" is an essential element of forgery under either definition. The Reporter's Comment under La. R.S. 14:72 provides:
"Intent to defraud:
"A general intent to defraud should be an essential element of forgery. However, it is unnecessary that an injury result from the actual consummation of the fraud, since the intent to defraud is sufficient. State v. McCranie, 192 La. 163, 187 So. 278 (1939). It is also unnecessary to prove that the offender intended to defraud any particular one, for if he intended to defraud any person the crime is complete. Hence it suffices if the instrument does or may prejudice the rights of another. State v. LaBorde, 120 La. 136, 45 So. 38 (1907).
"The intent should be able to be inferred from the circumstances, as in the case of a forgery of a check the `jury ought to infer an intent to defraud the person who would have to pay the instrument if it were genuine * * *'. State v. Dennett, 19 La.Ann. 395 (1867)."
That a general intent to defraud is an essential element of forgery is evident from the statute and the comment. Consequently, it is necessary to the offense that the offender either actively desire to defraud another or that he must have known that defrauding another was reasonably certain to result from his act or failure to act. La.R.S. 14:10. To defraud in the sense intended by the forgery definitions means to injure or prejudice the rights of another. State v. LaBorde, 120 La. 136, 45 So. 38 (1907). See W. Burdick, Law of Crimes § 663a, 551 (1946).[1] However, it is unnecessary *860 that an injury result from the actual consummation of the fraud, since the intent to defraud is sufficient. State v. McCranie, 192 La. 163, 187 So. 278 (1939). Furthermore, it is immaterial whom the offender intended to defraud, for it is sufficient if he intended that someone be defrauded. Louisiana, as well as several other jurisdictions, has deviated from the early common law rule that forgery required an intent to defraud a particular person. Burdick, supra, § 663, at 551; Clark and Marshall, Law of Crimes § 1243, 955-56 (7th ed. 1967).
The forgery statute is to be distinguished from La.R.S. 40:971(B)(1)(b) which makes it unlawful for any person knowingly or intentionally to "acquire or obtain possession of a controlled dangerous substance by misrepresentation, fraud, forgery, deception or subterfuge * * *." Proof of an intent to defraud is not required in every prosecution under this section of the controlled dangerous substances law. It is possible for a jury to convict upon finding that drugs were obtained without an intent of injury or prejudice to another's right if the act was committed by misrepresentation, deception or subterfuge. If the defendant had been prosecuted and convicted for violation of the substance offense, the result on appeal undoubtedly would have been different.
Applying the forgery statute to this case, we are forced to conclude that there is no evidence in the record, even when viewed in the light most favorable to the prosecution, from which a jury could reasonably find or infer that the defendant intended to injure or prejudice the rights of anyone. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). There is no evidence that she attempted or intended to obtain either medical services from the doctor or drugs from the pharmacist without paying for them. She certainly intended to deceive the pharmacist, but she did not intend to injure or prejudice anyone's rights. Although it might be possible to conjure up a far-fetched hypothetical in which injury to a person could result from her deception, the evidence in the record does not suggest any real possibility of injury and certainly does not indicate any injury which she must have adverted to as reasonably certain to result from her act.[2]
Our decision does not mean that, given the proper factual setting, falsification of a medical prescription could not constitute forgery under La.R.S. 14:72. If a prosecutor were faced with a case where intent to defraud could be established, he would have the option of charging the defendant with either general forgery or the more specific offense of obtaining a controlled dangerous substance through misrepresentation, fraud, forgery, deception or subterfuge. La.R.S. 40:971(B)(a)(b); see, State v. Juluke, 374 So.2d 1259 (La.1979); State v. O'Blanc, 346 So.2d 686 (La.1977). However, in a case such as the one on appeal, we cannot permit a person to be convicted of forgery without proof that she intended to prejudice the rights of another. To do so would be to read the words "with intent to defraud" out *861 of the statute. Such a course would be an improper allocation of the law-making function to the judiciary, for the legislature, by including those words in the definition of forgery, obviously intended that they be given some meaning. Without them, innocent and socially acceptable behavior, such as signing another's name to a writing as part of a practical joke without any intent to injure, would disproportionally expose the signer to a felony conviction and ten years imprisonment at hard labor and present a serious substantive due process issue. It is for this reason, we think, the legislature specified that an intent to defraud is to be an element of forgery. The legislature also realized that such a requirement would place conduct such as that of the defendantMs. Raymooutside the sphere of La.R.S. 14:72. To fill in this gap, La.R.S. 40:971(B)(1)(b) was enacted, making it a crime for a person to obtain a controlled dangerous substance through any means of deception, even without an intent to defraud or injure.
Because the state's case was devoid of evidence of an essential element of the charged offense, i.e., an intent to defraud, defendant's conviction and sentence must be set aside, In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); State v. Peoples, 383 So.2d 1006 (La.1980), regardless of how the error is brought to the attention of the reviewing court. State ex rel. Womack v. Blackburn, 393 So.2d 1216 (La.1981); Id., 1220 (Lemmon, J. concurring); cf., State v. Morris, 397 So.2d 1237, 1251 (La.1981) (on rehearing). Accordingly, we rest our decision on this ground without considering the defendant's assignments of error. Moreover, since the double jeopardy clause prevents retrial when a reversal is based on insufficiency of evidence due to the state's failure to prove an essential element of the offense, a judgment of acquittal must be entered. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); State v. Nguyen, 367 So.2d 342 (La.1979).
Accordingly, for the reasons assigned, defendant's conviction and sentence are reversed, and a judgment of acquittal is entered in her favor.
REVERSED; JUDGMENT OF ACQUITTAL RENDERED.
MARCUS and LEMMON, JJ., dissent and assign reasons.
MARCUS, Justice (dissenting).
In my view, the use of a forged prescription to obtain illegal drugs evidences an "intent to defraud." Accordingly, I respectfully dissent.
LEMMON, Justice, dissenting.
The majority places too narrow a construction on the term "intent to defraud". This court should clearly reject any suggestion that the term be limited to pecuniary matters.
One intends to defraud when one knowingly uses a false writing or signature to obtain anything of value to which one is not otherwise entitled.[1] Here, defendant intended to defraud the doctor and the pharmacist by obtaining substances which the doctor could not prescribe and the pharmacist could not dispense to persons who were not in need of medical treatment.[2] By presenting a prescription on which she had falsely made the doctor's signature (which she admitted in her confession), defendant intended by means of a counterfeit document to secure by fraudulent misrepresentations a substance to which she was not entitled.
*862 The evidence was sufficient to prove the elements of the crime.[3]
NOTES
[1] At early common law, the only prejudice which was sufficient to support a charge of forgery was prejudice to an economic right. J. W. Turner, Russell on Crime, pt. 7, ch. 72 at 1238 (12th ed. 1964).

The early Louisiana case of State v. Boasso, 38 La.Ann. 202 (Orleans 1886) interpreted the phrase "prejudice of rights" as something more than the definition of personal property. 38 La.Ann. at 206. However, what that "something" is has yet to be determined. Moreover, the court in Boasso was ruling upon a statute which required the intent to "injure or defraud" a person [emphasis added]. This statute is significantly different from La.R.S. 14:72, which requires an "intent to defraud." The significance of the presence of the word "injure" as part of the elements of the offense lies in the fact that "defraud" alone has commercial or business connotations, which would by its nature imply a situation involving a pecuniary matter. "Intent to injure" was added to the draft of the Model Penal Code to supplement the traditional mens rea of forgery legislation specifically for the purpose of eliminating any doubt that the subject of the intent to defraud could be something other than a matter of pecuniary concern. A.L.I. Model Penal Code, art. 224.1, Reporter's Comment 5(a).
As a consequence, Louisiana is one of the states which the drafters of the Model Penal Code categorized as having "ambiguous coverage" under its forgery statute. A.L.I. Model Penal Code, art. 224.1, Reporter's Comment 5(a), n.69. Given the facts of the present case, we find it unnecessary to resolve this ambiguity. Under either interpretation of the word "defraud," the record is devoid of any evidence by which a jury could find that Christine Raymo intended to defraud anyone.
[2] Mr. Justice Lemmon's dissenting opinion incorrectly suggests that this case presents the question of whether an intent to defraud includes an intent to injure pecuniarily. Discussion of this question would have been pure dicta, since there was no evidence that the defendant intended any kind of injury to anyone. See footnote 1, supra. Moreover, the author of the dissenting opinion does not address the problems which would have been involved in interpreting intent to defraud as including every type of deception. Instead, he contents himself with a partial paraphrase of Black's Law Dictionary's definition of "defraud," omitting a substantial portion of the definition which is contrary to his opinion. Black's Law Dictionary defines defraud and intent to defraud as follows:

Defraud: To make a misrepresentation of an existing material fact, knowing it to be false or making it recklessly without regard to whether it is true or false, intending one to rely and under circumstances in which such person does rely to his damage. To practice fraud; to cheat or trick. To deprive a person of property or any interest, estate, or right by fraud, deceit, or artifice.
Intent to defraud means an intention to deceive another person and, to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property.
Black's Law Dictionary (5th Ed. 1979), p. 381. [emphasis added].
[1] Black's Law Dictionary defines "defraud" as "[t]o practice fraud; to cheat or trick". There is no question that defendant here intended to "trick" the pharmacist into selling her the drugs she sought. This court should adhere to the principle set forth in R.S. 14:3 that provisions of the Code be "given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision".
[2] Defendant also intended to defraud the state, which has a legitimate interest in controlling dangerous substances. See R.S. 40:972 et seq.
[3] The fact that defendant could have been charged under another statute is not determinative of whether the state proved all of the elements of the crime with which she was charged. See R.S. 14:4; United States v. Batch elder, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); State v. Valasquez, 376 So.2d 129 (La.1979). Further, there is no evidence of a legislative intent to limit prosecutions for such conduct to R.S. 40:971(B)(1)(b).