WARD, Judge.
Robert Boyd was charged by Bill of Information with violating R.S. 14:42.1[1] by committing forcible rape of an eighteen year old female. He waived his right to trial by jury, and the Trial Judge found him guilty as charged. Boyd was sentenced to serve two years at hard labor. On appeal, Boyd requests this Court to review the record for errors patent. Finding no reversible errors patent on the record, we affirm the judgment of the Trial Court.
The record reveals error, but not reversible error. Code of Criminal Procedure Article 873 requires that the imposition of the sentence be delayed until at least twenty-four hours after the denial of a motion for a new trial. The record shows that Boyd was sentenced immediately after the denial of his motion for a new trial. Although it was error to sentence Boyd at that time, in State v. White, 404 So.2d 1202 (La.1981), the Louisiana Supreme Court held that an error in procedure which does not affect the fundamental fairness of the process does not necessarily require reversal and remand unless prejudice is shown. See also State v. Bogdan, 426 So.2d 158 (La.1983). In the instant case, there is no showing that Boyd was prejudiced by this procedural error.
When a defendant requests this Court to review the record for errors patent, we also review the record for sufficiency of evidence. See State v. Raymo, 419 So.2d 858 (La.1982). The standard of review of the sufficiency of evidence is found in the United States Supreme Court decision of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The appellate court is to review “the evidence in the light most favorable to the prosecution” to determine whether “any rational trier of fact could have found the essential elements of any crime beyond a reasonable doubt.” 443 U.S. at 319, 99 S.Ct. at 2789, *1270 61 L.Ed.2d at 573 (Emphasis in the original); State v. West, 408 So.2d 1302 (La.1982); State v. Fuller, 414 So.2d 306 (La.1982).
In order to sustain a conviction of forcible rape, the prosecution must prove that there was sexual intercourse without the lawful consent of the victim because the victim was prevented from resisting by force or threats of physical violence under circumstances where the victim reasonably believed that such resistence would not prevent the rape. R.S. 14:42.1.
At the beginning of the trial, counsel for defendant stipulated that Boyd had intercourse with the alleged victim on the date in question. Thus, the prosecution had only to prove there was an absence of lawful consent because force or threats of physical violence prevented the victim from resisting.
The alleged victim testified that she did not willingly consent to the act and that she believed it would have been useless to resist because she had been threatened with a wine bottle. According to her testimony, she had never dated Boyd but was an acquaintance of his prior to the alleged rape. She testified that on the date in question, she got out of school early and was shooting pool in a game room while waiting for a bus. Boyd approached her and told her that he wanted to talk to her about something. She and Boyd left the game room together and walked toward Boyd’s residence. Upon arriving at his residence, Boyd invited her upstairs. Once inside, Boyd allegedly asked her to be his girlfriend and she refused. She testified that he then, began kissing her on the neck, but when she objected to his advances, he began punching her, then he grabbed her around the neck and pulled her through the house. He then reportedly threatened her with a wine bottle and, upon realizing that she could not get away, she consented to intercourse. She testified that afterwards, the defendant let her go and instructed her not to say anything. She also stated that two people whom she believed to be Boyd’s brothers were in the house during the rape and were “bamming” on the locked bedroom door during the incident. After the rape, the two men entered the room briefly, asked her why she was trembling, and then went into the kitchen. She followed them into the kitchen and was given some milk and cookies. When she left the house, she went straight to the police station. She testified that she was checked by a doctor at the police station who gave her some medication to take for a swollen neck. On cross-examination, she explained that she did not ask the people she believed to be Boyd’s brothers for help because she feared that they would try to help or protect Boyd. She stated that she went into the kitchen and had cookies and milk only to gain time. The alleged victim was the State’s only witness.
The defendant’s brother, Donald Tanks, testified on behalf of the defense. He stated that he was at the house with a friend, Shelton Reynolds, during the time of the alleged rape. Tanks testified that the bedroom door had not been locked and that he passed through the bedroom on his way to the kitchen to get some cookies and milk. As he passed back through the bedroom on his way to the living room, the alleged victim, who was fully clothed at the time, asked him for some cookies so he gave her the cookies and milk and went back to the kitchen for more for himself. He again passed through the bedroom in returning to the living room. He testified that each time he observed Boyd and the State’s witness they were fully clothed, calm, and there was no indication that a struggle had taken place. After passing through the bedroom to get his cookies and milk, Tanks returned to the living room, and she came into the living room after about five minutes, got a cigarette from his friend, and returned to the back of the house for approximately fifteen minutes. He stated that she then returned with Boyd to the living room and Boyd showed her to the front door. According to Tanks, she did not appear upset when leaving, her hair was neat, and her clothing was not in a state of disarray.
*1271 Shelton Reynolds, the friend of defendant’s brother, gave an account that was consistent with that given by Tank’s with the exception that he stated that the alleged victim did not go into the back after receiving a cigarette from them, but that she smoked the cigarette in their company and left.
A neighbor who resided in the same building as Boyd testified that he was sitting on his front porch throughout the afternoon in question. He stated that he saw Boyd and the alleged victim enter the apartment together and that he later saw her exit alone. She stopped to ask him the time, stood there as if deciding which way to go, and then left. The neighbor testified that she appeared calm during their conversation and that she did not appear to have been injured. According to the neighbor, it is easy to hear from apartment to apartment but he did not hear any “bamming” or fighting. He estimated that the State’s witness had stayed in the apartment for approximately one and one-half hours. Another witness for the defense owned a business located under Boyd’s apartment and also denied hearing any disturbance at the time of the incident.
Boyd testified that the alleged victim invited him to play pool after school. After playing pool about half an hour, they walked to his house which was about five blocks from the pool hall and he invited her in. Once inside, Boyd got some milk and turned on the stereo. According to Boyd, she suggested that they go to his room and while they were in his bedroom, she made advances toward him. They had intercourse and she then asked him to have oral sex. When he refused she got dressed. His brother went through the bedroom to the kitchen and gave her cookies and milk when she asked. Boyd testified that she continued to try to coerce him into oral sex. She got a cigarette and returned to help him take out the back- braids in his hair. He then walked her to the door. He stated that she wanted him to catch the bus home with her to meet her mother. Boyd categorically denied hitting or threatening the alleged victim.
Although there was much contradictory testimony, the Trial Judge stated that he believed the State’s witness who testified that she did not willingly consent to intercourse with Boyd and that she believed it would-have been useless to resist. Viewing all of the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of forcible rape were proved beyond a reasonable doubt. See Jackson v. Virginia, supra. Accordingly, we affirm.

AFFIRMED.

. R.S. 14:42.1 provides: “Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
Whoever commits the crime of forcible rape shall be imprisoned at hard labor for not less than two nor more than forty years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence.”