LEMMON, Justice.
This is an appeal from a conviction for issuing a $2,499.12 worthless check in violation of La.R.S. 14:71A(1).[1] The principal *1237 issue is whether the evidence sufficiently established that defendant acted with a specific intent to defraud.[2]
Defendant issued a $2,499.12 check dated February 28, 1981 to the sales manager of an auto dealership in order to retrieve his car which had been repaired. Defendant did not contest the fact that he knew, at the time of issuance, that his account contained insufficient funds to cover the check. He also admitted that he stopped payment on the check on Monday, March 2. His defense was that he lacked an intent to defraud because he issued the check under a bona fide, reasonable belief that funds were forthcoming to cover his financial obligations. He also contended that he issued the check one week prior to February 28 and that a postdated check cannot be the basis for a charge of issuing worthless checks.
Although defendant testified that he gave the check to the manager (and picked up his car) a week prior to February 28, the sales manager testified positively that the transaction occurred on the 28th. The trial judge (who tried the ease without a jury) resolved the conflict, finding as a fact that the check was issued on the 28th. Our review of the record, satisfies us that the evidence supports this factual finding, and it is not necessary to decide whether La.R.S. 14:71A(1) applies to a postdated check.
On the issue of intent to defraud, defendant introduced considerable evidence regarding the sale on February 3, 1981 of a restaurant that he owned. The purchaser had signed an agreement and had issued several checks in large sums to defendant. However, these checks had not been honored by the bank because they were drawn on accounts with inadequate funds, and defendant was on notice that the purchaser’s checks were not being honored well before he wrote the check to the auto dealer.
In closing argument to the judge, defendant contended that he had a reasonable belief that he would be paid and could therefore easily discharge his financial obligation to the auto dealer who repaired his car. This evidence, defendant argued, defeats any implication that he acted with an intent to defraud, as is required by the worthless checks statute.
The trial judge in convicting defendant stated that he was satisfied that the evidence proved beyond a reasonable doubt that defendant was aware, by the time he issued the check in question, that the checks issued for the purchase of his restaurant would not be honored and that the purchase price would not be immediately forthcoming.[3] He therefore concluded that defendant acted with an intent to defraud. *1238 After reviewing the record, we conclude that the trial court’s findings and conclusions were reasonably supported by the evidence.
The sale of the restaurant took place in early February, 1981. By February 28, 1981, defendant had made numerous efforts to collect the proceeds of the sale, and he was aware that the checks he accepted in payment were not good. Despite this, he issued a check to the automobile dealer so that he could retrieve his car. Because the service office was closed and the cashier was not there, the sales manager demanded specific assurance of defendant when he accepted defendant’s check on Saturday that the check was issued on sufficient funds. When the sales manager called the bank on Monday, he discovered that defendant had misrepresented his financial condition and had even stopped payment on the check. Although defendant testified that he believed when he wrote the check that the money was forthcoming, the trial judge was not required to accept that testimony as credible.[4] Further, defendant did not offer to return possession of the car when the funds were not forthcoming. The overall circumstances, viewed in the light most favorable to the prosecution, were therefore sufficient for a rational factfinder to conclude beyond a reasonable doubt that, at the time of issuance of the check on February 28, defendant had no reasonable expectation that he would have “sufficient credit with the bank ... for the payment of such check ... in full upon its presentation”. La.R.S. 14:71A(1).
Finally, defendant contends that there was no proof of the required “exchange of anything of value”, since the debt had been incurred (and credit extended) at the time repairs were undertaken and completed, and he could have picked up his repaired car without issuing the check. The statute expressly applies “whether the exchange is *1239 contemporaneous or not”.[5] Moreover, the automobile dealer in this case had the right to retain possession of the vehicle until paid. See La.C.C. Art. 3217(2); La.R.S. 9:4501; Babington v. Stephens Import, 421 So.2d 275 (La.App. 4th Cir.1982). Therefore, the evidence reasonably supported the inference that defendant intended to “trick” or “cheat” the dealer into releasing possession of his automobile in exchange for the worthless check which he represented was issued in full payment for the repairs.[6] Thus, he intended to obtain something of pecuniary value (the possession of his repaired automobile) in exchange for the cheek which he knew was worthless. The evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational factfinder to conclude beyond a reasonable doubt that defendant acted with an intent to defraud. The fact that defendant himself may have been the victim of another person’s misrepresentations and may in fact have suffered a financial loss from worthless checks issued by another person does not alter this conclusion.
Defendant’s conviction and sentence are affirmed.

. La.R.S. 14:71A(1) provides in pertinent part:
"Issuing worthless checks is the issuing, in exchange for anything of value, whether the *1237 exchange is contemporaneous or not, with intent to defraud, of any check ... upon any bank ..., knowing at the time of the issuing that the offender has not sufficient credit with the bank ... for the payment of such check ... in full upon its presentation.”

. Defendant was sentenced to serve two years imprisonment at hard labor, to be served concurrently with a five-year hard labor sentence imposed on an unrelated theft conviction (for his part in staging a fake Wells Fargo holdup). That other conviction and sentence were summarily affirmed by this court. See State v. Imbornone, 450 So.2d 674 (La.1984).

. The judge stated oral reasons for judgment as follows:
"BY THE COURT: All right. Gentlemen, considering the evidence that’s been introduced at this particular trial, both testimonial and physical evidence, and the law which this Court has charged itself with, I am convinced beyond a reasonable doubt that at the time of the issuing of the check Mr. Imbornone knew that the check would be insufficient, and that he issued that check for purposes of fraud. "I base this conclusion on the fact that negotiations for the sale of the business of Mr. Imbornone's took place — the actual sale took place on the third of February, 1981. Testimony was to the effect that on a number of occasions, after placing checks, or after making a determination as to whether the checks that were issued for that sale were good, Mr. Imbornone knew that those checks were not good; would not be cashed by the bank. This is not to say that he did not try to collect what he believed to be his from the sale of the restaurant and lounge, but on the day in question, the 28th of February, the time of the issuing of the check, particularly in regard to the stop payment and the negotiations that he issued prior to that; it's the opinion of the *1238 Court that Mr. Imbornone knew of the situation.
"I’m sorry, and I might say in the record, for the position that Mr. Imbornone has been placed into by Mr. Eldridge, whom we have had testimony from before; but being sorry for an individual does not negate my duty under the law as I see it and as I see the evidence. I firmly believe that there was more than sufficient time for Mr. Imbornone to be aware that those checks had been — as a matter of fact one of the checks was returned N.S.F. upon it being — immediately the date of its issuance or the date after issuance, and Mr. Imbornone was called in to make a loan covering the proceeds or the split proceeds of that check. And at that time, immediately before the issuing of the check to Bernie Dumas, knew that he had — or should have known, at least, that he had a zero balance. I note in there that there were some checks deposited — $25.00, $200.00 — $25.00, $20.00 and $400.00 that were deposited after the loan was placed into the account, bringing the account to $445.00, however, a check was written in the amount of $200.00. I’m not counting the service charges on the N.S.F. overdraft, nor the regular service charge; bringing the account, again, down, on the 1st of March to $68.00. And the fact that on May 28 — 28th of February, a $2,400.00 some odd dollar check was written, again, convinces me beyond a reasonable doubt of my decision." These detailed findings by the trial judge have
greatly facilitated appellate review.

. As this court said in State v. Captville, 448 So.2d 676 (La.1984):
"When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant’s own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt."
A A A * ⅜ ⅜
"Such a finding of purposeful misrepresentation reasonably raises the inference of a ‘guilty mind', just as in the case of ‘flight’ following an offense or the case of a material misrepresentation of facts by a defendant following an offense. See State v. Davenport, 445 So.2d 1190 (La.1984). ‘Lying’ has been recognized as indicative of an awareness of wrongdoing. See State v. Rault, 445 So.2d 1202 (La.1984), in which this court, in rejecting as unreasonable an asserted ‘hypothesis of innocence’ (based on defendant’s own statement), stated: 'The jury could have reasonably concluded that Rault concocted this version of the crime to hide his own guilt’. 445 So.2d at 1213. Any contrary implications in State v. Savoy, 418 So.2d 547 (La.1982), and State v. Shapiro, 418 So.2d 372 (La.1983), simply mean that such evidence, although admissible to support a 'guilty mind’, are not alone sufficient to convict.” 448 So.2d at 680 and n. 4.

. As originally proposed, La.R.S. 14:71 would have encompassed issuance of a check for an antecedent debt, but the proposal was not adopted when the Legislature enacted the Criminal Code in 1942. See La.R.S. 14:71, Reporter’s Comment. However, the Legislature made the statute applicable to some antecedent debts by adopting Acts 1976, No. 651, which added the language "whether the exchange is contemporaneous or not”.

. In State v. Raymo, 419 So.2d 858 (La.1982), this court discussed the concept of intent to defraud in the context of the forgery article, La.R.S. 14:72. The court said:
"To defraud in the sense intended by the forgery definitions means to injure or prejudice the rights of another.” 419 So.2d at 859.
See also Black’s Law Dictionary 381 (5th Ed. 1979). The same concept of "injury or prejudicing” the rights of another would obviously also be applicable to the phrase "with intent to defraud” in the immediately preceding worthless checks article, La.R.S. 14:71.