508 So.2d 1021 (1987)
STATE of Louisiana
v.
Frank M. FALLS.
No. 87-KA-128.
Court of Appeal of Louisiana, Fifth Circuit.
June 1, 1987.
*1022 Dorothy Pendergast, Asst. Dist. Atty., Research & Appeals, Gretna, for plaintiff/appellee.
Martha E. Sassone, Indigent Defender Bd., Gretna, for defendant/appellant.
Before BOWES, KLIEBERT and WICKER, JJ.
WICKER, Judge.
On July 17, 1986, the defendant, Frank M. Falls (Falls) was charged by bill of information with the unauthorized entry of an inhabited dwelling in violation of L.S.A.-R.S. 14:62.3. Falls entered a plea of not guilty, was tried by jury and found guilty as charged. The trial court sentenced him on December 11, 1986 to three years in parish prison with credit for time served.
The testimony at trial set out the following: Amy Roepcke (Roepcke), a resident of the Sunwood Apartments in Jefferson Parish, testified that she was walking her cat in the complex at approximately 10:00 a.m. on July 5, 1986. She saw Falls sitting by *1023 the pool. He approached her as she walked around the pool toward an alley and attempted to converse with her. Despite her negative reply to such conversation, he continued to talk to her.
Roepcke then headed for her apartment. She stopped and spoke with some of her neighbors in an attempt to discourage Falls. Shortly thereafter her cat ran off. When she followed her cat, Falls followed her as well.
Falls told her that he loved her. She replied that she did not think that he knew the meaning of love. Falls reacted by grabbing her arm and asking her what she meant.
Roepcke became frightened and ran to her ground-floor apartment, locking the door and closing the drapes. Shortly thereafter she saw the door handle turn twice.
Roepcke waited approximately fifteen minutes to one-half hour and then looked outside through the peephole in the door and through both windows. Since she did not see Falls she left her apartment to get her mail. While returning to the apartment, she was again approached by Falls. She ran to the door and entered her apartment. However, Falls was right behind her. He placed his foot in the doorway in order to stop her from closing it. He then moved so that his body was partially inside her apartment. Roepcke also stated that his other foot was halfway in as well. Roepcke screamed for help and Falls moved back, allowing her to shut the door. Roepcke called the apartment manager and the security guard.
At trial Roepcke identified Falls as the person who positioned his body inside her doorway. She also testified that at no time did she give Falls permission to enter her apartment. Sharon Coulon (Coulon), the apartment manager on that date, spoke to Roepcke; obtained a description of Falls, and walked through the apartment complex. Coulon testified that she knew who Roepcke had described. She identified that person as Falls. Coulon saw Falls leaning against one of the buildings. She went to the apartment of the complex's security guard, who had also been informed of the incident and who had called the police. Coulon and the security guard looked through the complex for Falls and found him in front of Roepcke's apartment. He was leaning his ear against the door, turning the door handle. The security guard detained Falls until the police arrived.
Emory Gordon (Gordon), who resided at the Sunwood apartments with Falls' sister on the date of the incident, testified that Falls was staying with him at the time. He stated that when he left for work on that date he saw Falls talking to a woman who was holding a small animal. The woman appeared calm. Gordon did not see Falls make any threatening gestures toward her. However, he only observed them for 10 or 15 seconds.
Falls also testified. He stated that he was seated at the pool of the apartment complex on that date. He saw Roepcke approach and they engaged in conversation lasting six or seven minutes. He walked her back to her apartment. Once there, she opened the door and stepped inside. When he asked if he could go inside the apartment, she said "no" and shut the door on his foot. She screamed, so he pushed on the door in order to get his foot out of the door and walked away. He denied grabbing her or threatening her. He also denied having any part of his body inside her apartment. He stated that his foot was not inside her apartment; it was only in a space "between the door". The security guard stopped him after he had returned to the pool.
Falls now assigns the following errors on appeal:[1]
1. That the evidence at trial was not sufficient to justify the verdict;
2. Any and all errors patent;
3. That the court erred in imposing an excessive sentence, and

*1024 4. That the trial judge erred in denying counsel's motion for a mistrial.

SUFFICIENCY OF EVIDENCE
The State argues that this court should not examine the record to determine whether there has been sufficient evidence since no basis is given by appellant for the objection which was not raised in the trial court. However, whenever a case is "devoid of evidence of an essential element of the charged offense [the] conviction and sentence must be set aside [citations omitted] regardless of how the error is brought to the attention of the reviewing court." State v. Raymo, 419 So.2d 858, 861 (La. 1982). Therefore, since appellant raises the issue of sufficiency through his assignments of error, we are constrained to review the record in this regard in light of Raymo, supra.
In order to obtain a conviction in this case the State had to prove that: (1) Falls entered Roepcke's residence without authority; (2) that Roepcke's apartment was an inhabited dwelling used in whole or in part as a home or a place of abode by a person, and (3) that the apartment he entered belonged to someone other than himself. L.S.A.-R.S. 14:62.3.
In reviewing the sufficiency of the evidence we must view the evidence in the light most favorable to the prosecution, to determine if any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of every element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Williams, 490 So.2d 255 (La.1986).
In the instant case, Falls was convicted of an unauthorized entry of an inhabited dwelling in violation of L.S.A.-R.S. 14:62.3. The jury, must have found Roepcke to be the more credible witness and did not find that Falls was never inside her apartment as Falls asserted. The victim's testimony has been held to sufficiently establish the elements of the crime. State v. Johnson, 446 So.2d 1371 (La.App. 1st Cir.1984), writ denied 449 So.2d 1347 (La.1984); State v. Barnes, 491 So.2d 42 (La.App. 5th Cir. 1986).
The assessment of credibility of the witness is properly within the realm of the fact finder and an appellate court should not second-guess a credibility finding beyond the sufficiency evaluation under the Jackson, supra standard of review. State ex rel Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Butler, 450 So.2d 764 (La.App. 5th Cir.1984); Barnes, supra.
The jury evidently believed Roepcke's testimony that Falls placed his foot and part of his body inside her apartment. Both Roepcke and Falls agree that Roepcke did not give Falls permission to enter her apartment.
The seminal issue in the instant case is whether Falls' action in placing part of his body and his foot inside Roepcke's apartment, which was an inhabited dwelling used as Roepcke's home, is sufficient to constitute an entry for purposes of L.S.A.-R.S. 14:62.3 which provides in pertinent part:
[u]nauthorized entry of an inhabited dwelling is the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person. [Emphasis supplied]
In State v. Spindler, 477 So.2d 872 (La. App. 4th Cir.1985) the Fourth Circuit held that "both simple burglary and unauthorized entry of an inhabited dwelling are lesser included offenses of the crime of simple burglary of an inhabited dwelling." [Emphasis supplied] Spindler, supra at 874. As provided in pertinent part by L.S. A.-R.S. 14:62.2:
[s]imple burglary of an inhabited home is the unauthorized entry of any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft herein, other than as set forth in Article 60. [Emphasis supplied]
Thus, the legislature has used the same phrase of "unauthorized entry" in the simple *1025 burglary of an inhabited dwelling statute as it did in the statute providing for the crime of unauthorized entry of an inhabited dwelling. Furthermore, the legislature has placed the crime at issue in section 3, entitled "Burglary" which includes the following crimes: (1) L.S.A.-R.S. 14:62, Simple Burglary; (2) L.S.A.-R.S. 14:62.1, Simple Burglary of a pharmacy, (3) L.S.A.-R.S. 14:62.2, Simple Burglary of an inhabited dwelling and (4) L.S.A.-R.S. 14:62.3, Unauthorized Entry of an inhabited dwelling.
All of these crimes use the phrase "unauthorized entering" or "unauthorized entry". The legislature obviously intended the same meaning for each by the use of that term. Had it wanted a different meaning for the crime at issue, it would have used a different term or phrase. Until the legislature changes the wording in the instant statute we must therefore be guided by the use of this term relative to the burglary statutes since we have no jurisprudence in Louisiana relative to the statute at issue in setting forth a definition of "entry".
In State Ex Rel. Womack v. Blackburn, 393 So.2d 1216 (La.1981) the Louisiana Supreme Court concluded that a "sprung latch on the inside door establishes an unauthorized entry of [a] lounge." Blackburn, supra at 1220. This reasoning by our Louisiana Supreme Court is consistent with jurisprudence in other jurisdictions which define "entry" whenever "any part of the defendant's person passes the line of the threshold [footnote omitted]." 3 WHARTON'S CRIMINAL LAW, Section 332 (C.E. Torcia 14th ed. 1980 & Supp.1986) at 202.
Furthermore, "[i]t [is] sufficient if any part of the actor's person [intrudes], even momentarily, into the structure [footnote omitted]." W.R. LAFAVE & A.W. SCOTT, HANDBOOK ON CRIMINAL LAW 710-11 (1972) at 710. See also R. PERKINS, CRIMINAL LAW, Ch. 3, Section 1B (2nd ed. 1969).
Therefore, Falls' placing his body partially inside Roepcke's apartment is sufficient to constitute an entry. Viewed in the light most favorable to the prosecution, the evidence presented supports that all elements of the crime of unauthorized entry of an inhabited dwelling were proven by the State in this case. Accordingly, this assignment lacks merit.

MOTION FOR MISTRIAL
During the state's opening remarks, the assistant district attorney stated that after Roepcke was frightened by Falls, "she ran upstairs to her apartment." [Emphasis supplied]. The testimony later revealed that Roepcke lived on the first floor and that she was not chased into her apartment by Falls.
The remark was therefore erroneous. Counsel argues that the incorrect statement misled the jury and was therefore prejudicial. The trial court denied defense counsel's motion for a mistrial; however, he did admonish the jury at the close of the opening statements that the opening statements were not to be considered as evidence.
We conclude that the incorrect statement made by the assistant district attorney does not mandate a mistrial as provided for by L.S.A.-C.Cr.Proc. Art. 770.[2]
A mistrial is a drastic remedy and unless mandated by L.S.A.-C.Cr.Proc. Art. 770, *1026 the decision rests within the sound discretion of the trial judge. L.S.A.-C.Cr.Proc. Art. 771.[3] A mistrial is warranted only if substantial prejudice results which would deprive a defendant of a fair trial. L.S.A.-C.Cr.Proc. Art. 771; State v. Jarman, 445 So.2d 1184 (La.1984).
In this case the trial judge admonished the jury that opening statements were not to be considered as evidence. In addition, the testimony clearly revealed that Roepcke lived on the first floor and that she was not running into her apartment. Furthermore, Falls admitted that he placed his foot in a space "between the door" of Roepcke's apartment. He stated that he did not have her permission to enter the apartment. Therefore, the admonition by the trial judge was sufficient since the misstatement did not create prejudice sufficient to deprive Falls of a fair trial.
Accordingly, this assignment lacks merit.

ERROR PATENT
L.S.A.-C.Cr.Proc. Art. 920 provides that "[t]he following matters and no others shall be considered on appeal: (1) An error designated in the assignment of errors; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. See State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Parr, 498 So.2d 103 (La.App. 5th Cir.1986).
Falls commitment indicates a clerical error. It reads in pertinent part as follows:
WHEREAS FRANK M. FALLS was by due form of law lately CONVICTED before our 24th Judicial District Court for the Parish of Jefferson of Violating Revised Statute 14.62.3 BURGLARY OF INHABITED DWELLING.
We note that the proper codal provision for the offense of unauthorized entry of an inhabited dwelling is indicated; however, the crime is incorrectly identified as "BURGLARY OF INHABITED DWELLING" rather than the appropriate offense for which Falls was convicted. The transcript indicates that Falls was sentenced for the offense of unauthorized entry of an inhabited dwelling.
In State v. Lynch, 441 So.2d 732 (La. 1983), the Louisiana Supreme Court held that when there is a discrepancy between a minute entry and a transcript, the transcript should prevail. Similarly, the transcript should prevail in the instant case. Lynch, supra.
Furthermore, the error on the commitment is a clerical error which causes no discernible prejudice to Falls. The commitment is issued to give the sheriff power to execute the sentence pursuant to L.S.A. -R.S. 15:565. In State v. Collins, 130 La. 993, 58 So. 855 (La.1912) the court held that the failure of a mittimus to properly recite the offense for which the defendant was sentenced would not result in the defendant's release. See also State v. Collins, 131 La. 385, 59 So. 819 (La.1912).
*1027 Accordingly, we find the clerical error on the commitment does not warrant Falls release. We also note that on May 1, 1987 the record in this matter was supplemented by the trial court with a corrected commitment which does identify the correct crime. Finally, we find no other errors patent.

EXCESSIVE SENTENCE
Defense counsel assigns as error the sentencing of defendant to a term of three years imprisonment in parish prison. Counsel specifically asserts that the trial judge's placing emphasis on Falls' behavior rather than on his prior conviction would not support the sentence given in view of the fact that Falls was only 21 at the time of the offense.
Pursuant to the Louisiana Constitution of 1974, Article 1, Section 20, a defendant has a constitutional right against "cruel, excessive or unusual punishment." A sentence will be considered excessive if "grossly out of proportion to the severity of the crime" or "is nothing more than the purposeless and needless imposition of pain and suffering." State v. Brogdon, 457 So.2d 616 (La.1984); cert. den. Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985).
A sentence, although within the statutory limits, may be excessive and therefore is subject to appellate review. State v. Accardo, 466 So.2d 549 (La.App. 5th Cir.1985); writ denied, 468 So.2d 1204 (La.1985). A trial court is given great discretion in imposing sentence within statutory limits and the sentence will not be set aside absent manifest abuse of that discretion. State v. Schexnayder, 472 So.2d 174 (La.App. 5th Cir.1985).
L.S.A.-C.C.Cr.Proc. Art. 894.1 sets forth guidelines for the trial court to consider in imposing sentence. In order to ensure adequate review by the appellate court, while the trial court need not articulate each factor, the record should indicate that the trial court considered both the aggravating and mitigating factors set forth in Art. 894.1. State v. Accardo, supra.
In this case, the trial court sentenced Falls to three years without hard labor. The sentence imposed is less than the maximum that he could have received pursuant to L.S.A.-R.S. 14:62.3 which provides in pertinent part that: "Whoever commits the crime of unauthorized entry of an inhabited dwelling shall be fined not more than one thousand dollars or imprisoned with or without hard labor for not more than six years, or both."
At the sentencing, the trial judge stated:
[i]t seems to me once that young lady made that clear to you or to anybody else, then you don't have the right to pursue the young lady. She was clear; she didn't want to have anything to do with you.
Rather than leaving the young lady alone, you proceeded to go to her apartment, where you followed her to her apartment, and then you put your foot in the door in an effort to get into her apartment.
It was only after she screamed at you did you release the door and went about your business.
Maybe at that point we all ought to be thankful that you didn't get into that house, because I think you certainly had other designs at that point.
The presentence report points out that you wereyou had been on drugs for six months prior to this event. You were on clickers, whatever that drug is, the latest drug. You were convicted sometime ago of manslaughter, but that really doesn't concern me as much as the act that you committed on that particular day with that young lady. No young lady should be subject to that kind of treatment by you or by anyone else and it's for that reason that it's the judgment of this Court that you are sentenced to serve three years in the Parish Prison.
You will be given credit for whatever time you may have served.
Furthermore, the trial judge at the close of the sentencing stated that he had considered the guidelines for sentencing contained in L.S.A.-C.Cr.Proc. Art. 894.1 along with the circumstances of the case. He specifically stated that Falls "should be incarcerated for this crime."
*1028 Although the court does not indicate which of the guidelines of L.S.A.-C.Cr. Proc. Art. 894.1 he considered in imposing sentence we find it unnecessary to remand this case for more clearly articulated reasons. Ordinarily, when a trial court fails to adequately comply with the guidelines set forth in L.S.A.-C.Cr.Proc. Art. 894.1, the sentence will ordinarily be set aside and the case remanded for resentencing. State v. Sherer, 437 So.2d 276 (La.1983).
However, a remand is not necessary when the sentence imposed is not patently severe or when the record otherwise supports the sentencing choice. State v. Rivers, 470 So.2d 351 (La.App. 5th Cir.1985). Furthermore, we have declined to remand cases for resentencing despite the trial court's failure to comply with L.S.A.-C.Cr. Proc. Art. 894.1. when the record, particularly the presentence investigation report contained adequate support for the sentence imposed. State v. Torres, 470 So.2d 319 (La.App. 5th Cir.1985) and State v. Keller, 470 So.2d 325 (La.App. 5th Cir. 1985).
As noted previously, the trial judge referred to the presentence investigation report at the sentencing. In particular, he noted a prior conviction for manslaughter. Falls' prior felony conviction for manslaughter as well as the use of force and intimidation by placing his foot and half of his body inside Roepcke's apartment all constitute ample aggravating circumstances to consider under the guidelines to support the sentence.
Although the trial judge stressed the intimidation and forcefulness of Falls' entry, he was also mindful of his prior conviction for manslaughter. Therefore, the imposition of one-half of the maximum sentence is not excessive.
Accordingly, for the reasons stated above, the conviction and sentence are hereby affirmed.
AFFIRMED.
NOTES
[1] Assignment of error Nos. 1 and 3 as perfected in the trial court were not briefed nor argued on appeal. Assignments of error which are neither briefed nor argued are considered abandoned. State v. Perry, 420 So.2d 139 (La.1982), stay denied 427 So.2d 863 (La.1982), cert. denied, 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983); State v. Blanton, 325 So.2d 586 (La.1976).
[2] L.S.A.-C.Cr.Proc. Art. 770 provides that:

[U]pon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict. An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
[3] L.S.A.-C.Cr.Proc. Art. 771 provides that:

In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770. In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.