LAND, J.
Defendant was charged on information with the crime of forgery of the indorsement on a certain promissory note, was tried, convicted, sentenced, and has appealed.
The first bill was reserved to the refusal of the court to grant counsel for defendant a delay of 2 hours and 45 minutes to prepare and present a motion in writing setting forth the objections of the defendant to be tried by the tales jurors summoned to try the cause, and to inquire into the qualification and" character of the tales jurors on the list just then and there served on the defendant. The bill does not state the nature of the objections; and the trial judge certifies that no reasons were orally assigned.
The judge, in his per curiam, states that:
“The court being satisfied that the request was simply for delay and no injury could result to the defendant, the time was refused.”
It appears from the bill that on May 21, 1007, in anticipation of the exhaustion of the regular panel, the court ordered a number of tales jurors to be summoned from parts of the parish remote from the place of the offense, and that a list of the tales jurors thus summoned was served on the defendant on May 23, 1907, whereupon counsel for defendant moved the court for the delay already mentioned. Counsel did not then take the position that the defendant was entitled to the delay of two days from the service of the list, as provided by section 992 of the Revised Statutes of 1870, in eases of a regular venire. But counsel now contends in his brief that defendant was entitled to the statutory delay. The case of State v. Pollet, 45 La. Ann. 1168, 14 South. 179, held that a list of additional jurors drawn by the jury commissioners by order of court, under section 7, Act No. 44, p. 57, of 1877, in anticipation of the exhaustion of the regular venire, should be served as required by said section, because, though called talesmen in the act, such jurors could not be assimilated to talesmen drawn from among the bystanders.
Under section 11, Act No. 135, p. 222, of 1898, the judge might have ordered the jury commission to draw additional jurors or talesmen for service. He did not do so, but under the same section ordered talesmen to be summoned by the sheriff from portions of the *139 parish remote from the scene of the crime. The per curiam recites that this instruction was sanctioned by counsel for the defendant. It is obvious "that counsel for the accused had abundant time to move to quash the order for summoning talesmen, if he deemed such order illegal or irregular, and, failing to do so at the proper time, waived any objections he may have had. The jurors were talesmen, pure and simple, under section 11, Act No.' 135, p. 222, of 1898, and the statutory service of the jury list was not required. As a question of law, the defendant was not entitled to any specific delay for the inspection and examination of the jury list. The matter was one within the discretion of the trial judge, and, if he erred, no prejudice has been shown. Defendant had full opportunity to examine each and every juror on his voire dire, and the record discloses no objection to any juror sworn of the panel.
2. The next bill is an objection to the written charge of the court, on the ground that it did not contain six special instructions requested by counsel for the defendant.
These instructions were refused in the language of the trial judge, “because the law applicable to the case was included in the charge to the jury.” The bill recites no facts as a basis for the special instructions.
The charge, as far as necessary to be quoted, after stating that the defendant was prosecuted under section 833 of the Revised Statutes for forgery, proceeds as follows:
“The crime of forgery is defined to be the false making, writing, or signing- of any paper to the prejudice of another person. The accused being prosecuted for forgery of the name of Theo. Lemoine on the back of a note made payable to the order of the Merchants’ & Planters’ Bank of Bunkie, in order to convict him, the burden of proof is on the state to prove beyond a reasonable doubt that the defendant forged the name of Theo. Lemoine on the back of the note described, and that he did so with the intent to defraud some one. It is not necessary to prove that he intended to defraud any particular one. If he intended to defraud, the crime is completed. Now, the fact that the forger intended to pay is no excuse. The law presumes the intent to defraud, if any person may suffer by receiving such paper as being genuine, nor is it necessary that any one should be injured, if the intent to defraud existed at the time of the writing. The guilt of the accused must be established beyond a reasonable doubt. A reasonable doubt is a condition which results-from the weakness of the evidence, and prevents you from arriving at an easy conclusion, and would do violence to your conscience, but these doubts must not be imaginary doubts. They must be the effect of insufficient evidence. If you entertain these doubts, you must acquit the accused or else you must convict.”
The defendant made no specific objection to any portion of the charge as given, and a general objection cannot be considered.
The special instructions read as follows:
“(1) To secure a verdict of guilty in the case, it is not sufficient that the state show a false making of the indorsement of Theo. Lemoine to the note described in the indictment, but it must also appear from the evidence that such false making was felonious, and made with intent to defraud some one.
“(2) The intent to defraud must be shown by the state by evidence that will convince the jury beyond a reasonable doubt before the jury can find a verdict of guilty.
“(3) If the jury, after considering the evidence and the law which has been given by the court, should have a reasonable doubt as to the accused’s intent or purpose to defraud, it is their duty to give him the benefit of such a doubt, and return a verdict of not guilty.
“(4) The mere false'making of another’s signature is not in itself forgery. If there is at the time of such false making no intention in the mind of the accused to profit by the act to defraud some one, the charge is not made out, and the jury must acquit.
“(5) It is also true that the intention to deceive in the false making of another signature will not of itself justify a conviction under the charge of forgery. There must also concur in the mind of the accused the intention to profit by the false making and injure some one.
“(6) The accused is entitled to a reasonable doubt upon every essential ingredient or element of the crime for which he is being tried, and, if the jury entertain a reasonable doubt upon any one such ingredient, it is their duty to acquit.”
Section 833 of the Revised Statutes of 1870 defines forgery as the false making of certain instruments “with intent to defraud any person.” It suffices if the forged instrument does or may prejudice the rights of -another. State v. Anderson, 30 La. Ann. 557, State v. Boasso, 38 La. Ann. 202.
“A jury ought to infer an intent to defraud" the person who would have to pay the instru *141 ment if it were genuine. * * * If there be a bare possibility of fraud, it is enough to constitute the offense.”
See State v. Ford, 38 La. Ann. 798.
In the case at bar, if the evidence showed that the defendant forged the indorsement on the note, the intent to defraud the in-dorser ought to have been inferred by the jury.
The first, second, and third instructions are covered by the charge of the court that the state was bound to prove beyond a reasonable doubt both the false making and the intent to defraud. It was not incumbent on the court to divide this portion of the charge into three separate paragraphs. The fourth instruction, that there must be an intention in the mind of the accused to profit by the act to defraud some one, certainly requires explanation and qualification. If the instruction means no more than an intent to. defraud, it is covered by the general charge. If it means that, besides the intent to defraud, there must be an intent to profit, it is not good law, as It suffices that some person may be prejudiced by the forgery. The same observations apply to the fifth instruction.
The sixth and last instruction is a general abstract proposition of law that would have conveyed no information to the jury, unless accompanied by an explanation of the ingredients of the crime then on trial, and as to which the jury had already been fully charged. In concluding the discussion of this bill of exception, we may add that the charge of the court is a full, fair, and impartial exposition of the law applicable to the simple case of the forgery of an indorsement on a note made by the accused in favor of a bank, presumably for the purpose of raising money.
3. The defendant filed a motion for a new trial on the ground that he was prejudiced in his defense and deprived of substantial rights by the refusal of the court to grant him time to examine the list of tales jurors by which he was tried, and on the further ground that the court had erred in refusing to give the special instructions requested. The motion is a lengthy amplification of bill No. 1, and the gravamen of defendant’s complaint is that the sheriff confined his selection of the tales jurors who tried the case to the First Ward and the first precinct of the Tenth Ward of the Parish; that such action of the sheriff was illegal and deprived the defendant of the right to a trial by a jury of the vicin-age; that the motive of the sheriff was to secure Americans as jurors as contradistin-guished from Creoles, as shown by the fact that out of 42 tales jurors only 2 were Creoles, while the population of the balance of the parish is 95 per cent. Creole; that the inhabitants of the first ward were all perfect strangers to defendant, and he was entitled to trial by men who were acquainted with his character and reputation; that the objections to said tales jurors could not have been urged sooner, and that he reiterates the objection presented in bill No. 1.
The motion embodies the following extract from the sheriff’s report:
“At the time of receiving this order from your honor, it was just at the close of another case against the accused in which it had been very difficult to find a jury. During the drawing of the jury, it appeared that the case and the facts were well known and had been discussed in nearly all the sections of the parish. With this in mind and at the same time obeying the orders of the court, I thought the most likely place to find jurors who had not heard of and discussed' the case would be in Ward 1 and in the first precinct of Ward 10 of the parish ; Ward 1 being at the extreme northern portion of the parish and precinct No. 1 of Ward 10 in the extreme southern section of the parish.”
The report of the sheriff is in the record, and that officer states therein that he was ordered by the court to summon 45 tales jurors, to be taken from sections of the parish remote from the places where “any phase of the case was committed and from where any of the parties lived.”
*143 The trial judge overruled, the motion for a new trial (1) for the reasons assigned in hill of exceptions No. 1; and (2) “because the court knows of no law excluding American jurors in criminal cases where a Oreóle is on trial. The jurors summoned were all competent tales jurors, who knew nothing of the case, and were strangers to the accused, were fair minded, and rendered a verdict according to the law and the evidence.”
The judge had the power under section 11, Act No. 135, p. 222, of 1898 to order tales jurors summoned from parts of the parish remote from the scene of the crime, and we know of no law which confers on the accused the right to be tried by his friends and acquaintances, or by jurors from a particular portion of the parish, or by jurors of the same race.
Judgment affirmed.