499 So.2d 1304 (1986)
STATE of Louisiana
v.
Alvin J. FRALEY.
No. KA-3880.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1986.
*1306 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Pamela S. Moran, Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
Stegeman & Marrero, Russell Stegeman, Gretna, for defendant-appellant.
Before WARD and ARMSTRONG, JJ., and PRESTON H. HUFFT, J., Pro Tem.
ARMSTRONG, Judge.
The defendant, Alvin Fraley, was charged with and convicted of one count of illegal possession of stolen property valued at $500.00 or more, a violation of LSA-R.S. 14:69, three counts of forgery, violations of LSA-R.S. 14:72, and one count of injuring public documents, a violation of LSA-R.S. 14:132. On January 16, 1985 defendant's motion for a new trial was denied, and he was sentenced to serve four ten-year sentences at hard labor as to counts one through four and one five year sentence at hard labor as to count five. Sentences were to run concurrently. The defendant filed a motion for appeal which was granted by the trial court. On February 14, 1985 the state filed a multiple bill of information against the defendant. On April 16, 1985 the trial court set aside defendant's original sentence and sentenced him as a fourth offender to serve twenty years at hard labor. On April 24, 1985 defendant filed a motion for appeal. The trial court granted the motion, consolidating it with the previous appeal filed on January 16, 1985. Defense counsel asserts eight assignments of error. Additionally, the defendant has filed a pro se brief in which he assigns three errors.
We have reviewed the record for errors patent and have found one. The record reflects that the trial court did not wait twenty-four hours after denying the defendant's motion for a new trial before imposing sentence. LSA-C.Cr.P. Art. 873. The defendant does not assign this as error nor allege any prejudice. We do not find any prejudice flowing from this error and therefore find the error to be harmless. State v. Brogdon, 426 So.2d 158 (La.1983); State v. Dixon, 471 So.2d 282 (La.App. 4th Cir.1985).
By his assignments of error numbers seven and eight, and in his pro se brief the defendant submits several challenges to his adjudication and sentence as a multiple offender pursuant to LSA-R.S. 15:529.1. We pretermit review of those assignments of error as we find that the trial court was without jurisdiction to impose sentence.
In the instant case, the order of appeal was signed by the trial court on January 16, 1985. The defendant was resentenced as a multiple offender on April 16, 1985. Under the provisions of LSA-C. Cr.P. Art. 916 as it read at the time of the multiple bill proceeding in this case, the trial court was divested of jurisdiction when the order of appeal was entered. Because *1307 the order of appeal in this case was entered prior to resentencing on the multiple bill the trial court was without jurisdiction to impose the enhanced sentence. State ex rel Tuesno v. Maggio, 441 So.2d 1226 (La.1983); State v. Felton, 482 So.2d 191 (La.App. 4th Cir.1986); State v. Garland, 482 So.2d 133 (La.App. 4th Cir.1986).
We note that the Louisiana Legislature recently amended LSA-C.Cr.P. Art. 916 to specifically allow the trial court to retain jurisdiction for sentencing purposes under the Habitual Offender Law. Acts 1986, No. 851; LSA-C.Cr.P. 916(8). Because this amendment is a change in criminal procedure, it applies only to proceedings subsequent to its effective date. State v. Martin, 351 So.2d 92 (La.1977). Hence, because Fraley was charged and convicted under the multiple bill before August 30, 1986, the effective date of the amendment, it does not apply to his case, and the trial court was without jurisdiction to impose the enchanced sentence.
By assignments of error numbers two through six, defendant contends that insufficient evidence exists to support his convictions.
In reviewing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Dauzart, 461 So.2d 382 (La.App. 4th Cir.1984).
When the State's case is based on circumstantial evidence, the statutory rule of R.S. 15:438 provides that, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. This rule is not a purely separate test from the Jackson standard, but rather an evidentiary guideline for the jury when considering circumstantial evidence. It is, therefore, a component of the more comprehensive reasonable doubt standard. State v. Nealy, 450 So.2d 634 (La.1984). Ultimately, it is the Jackson standard which is the objective standard for testing the overall evidence, direct and circumstantial. State v. Porretto, 468 So.2d 1142 (La.1985); Nealy, supra; State v. Wright, 445 So.2d 1198 (La.1984).
Viewing the evidence in the light most favorable to the prosecution, these are salient facts:
Sometime in May of 1984, a brown 1984 Thunderbird automobile was stolen from the lot of Interstate Ford. Mr. Ritter, assistant manager of Interstate Ford, testified that the value of the Thunderbird was $10,800.00 and that Interstate Ford did not consent to the taking of the car from the dealership lot.
On June 10, 1984, Lieutenant John Ruth was driving in his patrol car on Downman Road. He stopped at a red light at the intersection of Downman Road and Chef Menteur Highway. The defendant, driving a 1984 brown Thunderbird, stopped in the lane next to him. Ruth looked over and noticed that the defendant was wearing a wig. The defendant saw Ruth looking at him. The defendant jerked his head and stared straight ahead. When Ruth saw that the defendant's car did not have a brake tag, he started to follow the defendant. Ruth noticed that although the car was a brand new Thunderbird, the license plate was from Arizona and was several years old. He then stopped the defendant and requested identification. The defendant produced a driver's license which had been issued three days prior to this stop. The name on the driver's license was James Wallace Simpson. The defendant's picture was on the license. Ruth was unable to see the vehicle identification number (VIN) on the dash board of the car. Ruth asked the defendant who owned the car, the defendant replied that it was his. When defendant could not find the registration papers to the car, he told Ruth they were at his home. Ruth asked the defendant what the address on the driver's license was but the defendant was unable to tell him. The defendant then told Ruth that the car belonged to another person. When the defendant *1308 opened the trunk of the car to search for the registration papers, Ruth saw two license plates in the trunk.
While the defendant was stopped, Ruth radioed for reinforcements. Officer Blanque responded to the call. When he looked at the dashboard of the car, he discovered that paper had been taped over the VIN. Blanque called in the VIN and discovered that the car had been stolen from Interstate Ford. Blanque also saw the license plates in the trunk. In addition he saw a tablet of blank baptismal certificates. Blanque told the defendant that he did not believe the defendant was James Wallace Simpson. The defendant took out of his wallet a birth certificate and a baptismal certificate in the name of James Wallace Simpson. Blanque stated that when the birth certificate was set on the dash board of the car, he could see writing underneath a blacked-out portion of the certificate. The writing indicated that James Wallace Simpson had died in 1959.
The defendant was arrested and brought to Central Lockup where he was fingerprinted. The defendant was informed that if he signed the fingerprint card with a name that was not his, he would also be charged with injuring public documents, a violation of LSA-R.S. 14:132. The defendant signed the fingerprint card as James Wallace Simpson. His prints were sent through the NCIC computer. It was discovered that the defendant was Alvin Fraley.
At trial, it was stipulated that D.A. Investigator Harry Nelson took a handwriting sample from the defendant and forwarded it to Officer James Dupre of the Crime Lab.
Officer James Dupre qualified as an expert in handwriting identification and comparison. He compared the handwriting sample taken from the defendant with the baptismal certificate of "James Wallace Simpson." He testified that they were probably written by the same person.
Officer Glynn Burmaster was stipulated an expert in fingerprint identification. He compared a fingerprint card signed by Alvin Fraley with the fingerprint card signed by James Wallace Simpson and concluded that they were the same person.
The defendant was charged with and convicted of one count of illegal possession of stolen things, a violation of La. R.S. 14:69. That statute provides in pertinent part:
Illegal possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.
The four essential elements that must be proven to sustain a conviction of this crime are: (1) that the item was stolen; (2) that the item was of value; (3) that the defendant knew or should have known the property was stolen; and (4) that the defendant intentionally procured, received, or concealed the property. State v. Walker, 350 So.2d 176 (La.1977); State v. Moore, 439 So.2d 1178 (La.App. 4th Cir.1983) writ den. 443 So.2d 587 (La.1983). The court has also held that the mere possession of stolen property does not create a presumption that the possessor knew or had good reason to believe it was stolen. State v. Ennis, 414 So.2d 661 (La.1982).
The testimony in the present case shows that the defendant was stopped while driving a stolen 1984 Ford Thunderbird worth almost $11,000.00. The VIN on the dashboard had been taped over. The license plate was much older than the car and was from the state of Arizona. The defendant first told the officers that the car was his. It was only when he was unable to produce the registration that he told the police officers that the car belonged to someone else. Given these facts, a rational trier of fact could have found the defendant guilty of receiving stolen property beyond a reasonable doubt.
The defendant was charged with and convicted of three counts of forgery, a *1309 violation of R.S. 14:72. That statute provides in pertinent part:
Forgery is the false making or altering, with intent to defraud, of any signature to, or any part of, any writing purporting to have legal efficacy.
Issuing or transferring, with intent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute forgery.
In State v. Tomlinson, 457 So.2d 651 (La. 1984) the court stated:
Thus, forgery may be committed by acting with an intent to defraud to either (1) make or alter a signature or another part of an instrument, or (2) issue or transfer an instrument known to be forged.
Id. at 652.
In State v. Thomas, 454 So.2d 833, 834 (La.App. 4th Cir.1984) this court set forth the elements of the crime of forgery: 1) issuing or transferring, 2) with intent to defraud, 3) a forged writing, 4) known by the defendant to be forged. See also State v. Francis, 482 So.2d 154 (La.App. 4th Cir. 1986).
In State v. Marler, 428 So.2d 954 (La. App. 1st Cir.1983) writ den. 433 So.2d 151 (La.1983) the court noted that:
It is the essence of forgery that the writing purports to be the act of another person. State v. Melson, 161 La. 423, 108 So. 794 (1926). It is unnecessary to prove that the offender intended to defraud any particular person. State v. Laborde, 120 La. 136, 45 So. 38 (1907). The criminal intent required for forgery is to defraud any person, and it suffices if the forged instrument has prejudiced or might prejudice the rights of another. An intent to profit by the act is not a necessary element of the offense. State v. Jacobs, 195 La. 281, 196 So. 347 (1940); State v. Laborde, supra. Moreover, specific intent is a state of mind and need not be proved as a fact but may be inferred from the circumstances and transactions of the case. State v. Williams, 383 So.2d 369 (La.1980), writ denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 828 (1981).
In addition to an intent to defraud, forgery requires that the falsification be made upon a "writing purporting to have legal efficacy." La.R.S. 14:72.
In count one of the bill of information, the defendant was charged with the forgery of a baptismal certificate. At trial, the State produced evidence to show that the handwriting on the baptismal certificate and the defendant's handwriting sample were probably written by the same person, that the defendant had a stack of blank baptismal certificates and that the name on the certificate was the alias the defendant was using. Any rational trier of fact could have found the defendant guilty of forgery of the baptismal certificate.
In count three the defendant was charged with forgery of a Louisiana driver's license. At trial the State introduced the license which had been issued several days prior to the defendant's arrest. The driver's license was issued to James Wallace Simpson, the alias the defendant was using. Although the State did not compare the defendant's signature on the handwriting exemplar and the signature on the driver's license, the jury viewed both documents and could have compared them. Any rational trier of fact could have found the defendant guilty of forgery of a driver's license beyond a reasonable doubt.
On count four, the defendant was charged and convicted of forging a birth certificate. We find the evidence sufficient to support this conviction. The evidence shows that the defendant was in the sole possession of, and was using, the birth certificate of the individual whose identity he had assumed as an alias and that the date of death on the certificate had been obliterated. We believe this strong circumstantial evidence supports the conclusion that a rational juror, viewing the evidence in the light most favorable to the State, could have found the elements of the crime of forging the birth certificate.
The defendant was charged with and convicted of count five of the bill of *1310 information with injuring a public record, a violation of R.S. 14:132. That statute provides in pertinent part:
Injuring public records is the intentional removal, mutilation, destruction, altercation, falsification, or concealment of any record, document, or other thing, filed or deposited by authority of law, in any public office or with any public officer.
Thus, in this case, to support a conviction for injuring public records the State must prove that the defendant 1) intentionally falsified 2) a document 3) filed or deposited 4) by authority of law 5) in any public office. At trial, the State proved that the police officer informed the defendant that if he did not sign his own name he would be committing a crime, that the defendant signed a false name and that an NCIC check revealed that the name was false. The card was then filed with the police department and made a permanent record of NCIC. Any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of injuring public records.
By assignment of error number one, the defendant alleges that he was denied a fair trial because he appeared in prison clothes and shackles during the jury selection.
A defendant cannot be compelled to stand trial before a jury while dressed in identifiable prison clothes. Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). When examining this issue on appeal, the court has focused on whether the defendant demonstrated that his clothing at trial was readily identifiable as prison attire, State v. Leggett, 363 So.2d 434 (La.1978), State v. Claiborne, 483 So.2d 1301 (La.App. 4th Cir.1986), whether the defendant was actually compelled after objection to stand trial in prison clothes, State v. Conger, 483 So.2d 1100 (La.App. 4th Cir.1986), and whether the defendant was prejudiced by wearing the prison clothing. State v. Tennant, 262 La. 941, 265 So.2d 230 (1972). Additionally, to preserve the issue on review, the defendant must object at trial to being compelled to attend court proceedings in prison clothes. Estelle v. Williams, supra.
In the instant case the record reflects that the defendant's attorney objected to the jury venire having seen the defendant in court while dressed in prison garb and requested that a new jury panel be called just as voir dire was about to begin. The court denied the request and pointed out that it was up to the defense attorney to see that his client had civilian clothes to wear. Nevertheless, the court allowed the defendant an opportunity to change clothes. The defense attorney then requested that the defendant be given the clothes he wore at the time of his arrest. The request was denied after the prosecutor informed the court that the clothing was part of the state's evidence. Afterwards defendant was brought into the courtroom and voir dire began. However, at some point prior to the reading of the bill of information, the defendant did in fact change into civilian clothing which he wore throughout the proceedings.
The facts of this case are similar to those set forth in State v. Kinchen, 290 So.2d 860 (La.1974). In that case, the defendant and another accused were brought into the courtroom when the jury venire was present. The defendant was then returned to the jail where he was allowed to change into civilian clothes. Later he returned to the courtroom, his case was called, the jury was selected and the case proceeded to trial. The trial court found no prejudice shown by the defendant and the appellate court affirmed.
Based upon the record before us we cannot say that the court compelled the defendant to stand trial in prison clothes. Furthermore, the defendant has failed to establish or even argue that his clothing during voir dire was readily identifiable as prison attire. We therefore decline to find reversible error where the trial court's efforts to accommodate the defendant simply failed to meet his expectations. See State v. Conger, Id. at 1102. We note that although the defense objected to the defendant's appearance in prison garb, the record does not reflect, nor was an objection noted, that the defendant at any time appeared *1311 before the jury while shackled. The defendant has thus failed to preserve this issue or appeal. LSA-C.Cr.P. Art. 841.
In his pro se brief the defendant alleges that the trial court erred in denying his motion to quash because the time in which the State could institute prosecution had prescribed. The defendant argues that the fact that the State filed a bill of information on August 17, 1984, more than sixty days after his arrest and incarceration on June 10, 1984, barred the State from bringing him to trial.
C.Cr.P. art. 701(B) provides:
B. The time period for filing a bill of information or indictment after arrest shall be as follows:
(1) When the defendant is continued in custody subsequent to an arrest, an indictment or information shall be filed within forty-five days of the arrest if the defendant is being held for a misdemeanor and within sixty days of the arrest if the defendant is being held for a felony.
(2) When the defendant is not continued in custody subsequent to arrest, an indictment or information shall be filed within ninety days of the arrest if the defendant is booked with a misdemeanor and one hundred fifty days of the arrest if the defendant is booked with a felony.
Failure to institute prosecution as provided in Subparagraph (1) shall result in release of the defendant if, after contradictory hearing with the district attorney, just cause for the failure is not shown. If just cause is shown, the court shall reconsider bail for the defendant. Failure to institute prosecution as provided in Subparagraph (2) shall result in the release of the bail obligation if, after contradictory hearing with the district attorney, just cause for the delay is not shown.
In State v. Grissom, 448 So.2d 757 (La. App. 2nd Cir.1984) the court noted in order to be successful in a motion to quash based on an untimely bill of information, the defendant must prove he was prejudiced by the delay in filing the bill. If he is successful, he is only entitled to release from incarceration, not discharge from prosecution.
Here the defendant makes no showing that he was prejudiced by the delay in filing the bill of information. In addition, the relief he seeks, which would bar prosecution, is not an available remedy.
This assignment lacks merit.
For the foregoing reasons defendant's convictions are affirmed. The trial court's finding and sentencing of defendant as a fourth offender is set aside as the trial court was without jurisdiction to conduct the multiple offender proceedings, and defendant's original sentences for convictions on counts one, two, three, four and five are reinstated.
CONVICTIONS AFFIRMED; SENTENCE VACATED; ORIGINAL SENTENCES REINSTATED.