547 So.2d 1361 (1989)
STATE of Louisiana
v.
John E. SPELLMAN.
No. KA-8761.
Court of Appeal of Louisiana, Fourth Circuit.
July 27, 1989.
*1362 John F. Rowley, Dist. Atty., Glenn E. Diaz, Wayne J. McDougall, Asst. Dist. Attys., Chalmette, for state.
Nancy L. Connolly, Student Practitioner, Calvin Johnson, Supervising Atty., New Orleans, for defendant.
Before GARRISON, PLOTKIN and BECKER, JJ.
PLOTKIN, Judge.
On September 5, 1985 the defendant was charged by bill of information with forgery, a violation of R.S. 14:72. He was found guilty as charged by a jury on December 4, 1986. He was originally sentenced on March 2, 1987 to ten years at hard labor. He was subsequently adjudicated a fourth felony offender on April 26, 1988 and resentenced on that date to twenty years at hard labor, without benefit of probation or suspension of sentence. The defendant appeals his conviction and his multiple bill sentence. The defendant's counsel filed an original brief seeking review of three assignments of error. In a supplemental brief, the defendant, pro se, argued five additional assignments of error. After reviewing both appellate briefs, we affirm the defendant's conviction but vacate the multiple bill sentence and remand for resentencing.
STATEMENT OF THE FACTS:
On the morning of July 8, 1985, Mr. and Mrs. Raymond Keller's home in St. Bernard Parish was burglarized while Mr. and Mrs. Keller were in Alabama. A book of checks in Mr. Keller's name, on his account at the Peoples Bank in St. Bernard Parish was stolen. An itinerant labor card, which contained an I.D. picture, that Mr. Keller had obtained some years earlier while working for Brown and Root in Plaquemines Parish was also stolen.
At about 5:45 p.m. that same day, the defendant drove up to one of the drive-through windows at the People's Bank in a green LTD with a blue fender and tried to cash a check. The check, on Mr. Keller's account, was made payable to cash in the amount of $200.00. It was signed on the front and the back "Raymond P. Keller, Jr." After checking the signature card for the account, the teller found that the signature on the check did not match either Mr. or Mrs. Keller's signature.
After discovery of the signature discrepancy, the teller asked to see the defendant's driver's license. The defendant told her he did not have his driver's license with him. She asked for other identification. He presented Mr. Keller's itinerant labor card. The picture of Mr. Keller had been cut out and replaced with a picture of the defendant.
*1363 At this point, the teller consulted the bank manager for instructions. The manager telephoned Ms. Keller who had just returned home from Alabama. He asked her if Mr. Keller might be trying to cash a $200.00 check. Ms. Keller told the manager that Mr. Keller was still in Alabama and that their house had been robbed that morning.
With verification of a possible fraudulent transaction, the manager called the police giving them a description of the car the defendant was driving. Meanwhile, the defendant drove off and returned. He told the teller that he had found his driver's license and, if she would return the picture identification card to him, he would give her his driver's license.
After the teller refused to return the altered identification card, the defendant again drove off. At this time, the police were arriving but did not stop him because they had been given the wrong description of the suspect's car. However, Officer Hernandez, who knew Spellman, saw him drive away. Hernandez did not know that Spellman was the perpetrator until later when he saw the identification card with Spellman's picture in it. Spellman was arrested at 517 South Dorgenois Street in New Orleans.
ERRORS PATENT
A review of the record reveals no errors patent.
ASSIGNMENT OF ERROR NO. 1
The defendant contends that the fact that he was compelled to wear prison garb during his trial creates reversible error. The defendant relies on Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), where the court held that a defendant cannot be compelled to stand trial before a jury while dressed in identifiable prison clothes. The court indicated that the rule in Estelle was to prevent the defendant from initially being prejudiced in the eyes of the jury overcoming the presumption of innocence. In reviewing this issue on appeal the courts have considered (1) whether the clothes worn were easily identifiable as prison attire (2) whether the defendant was actually compelled after objection to wear the prison clothes and (3) whether the defendant was prejudiced by wearing the prison clothes. State v. Fraley, 499 So.2d 1304 (La.App.4th Cir.1986).
Immediately before the trial, the defendant was transferred from Orleans Parish Prison in prison clothes. The court ordered the deputies to secure civilian clothes for the defendant. The deputies offered Spellman the clothing of a fellow inmate, which he rejected without trying them on, because he did not think they would fit him. His personal belongings were at his sister's house.
The defendant was not compelled to wear a prison uniform at trial. He was offered civilian clothing, but refused to wear the clothes. A defendant is not entitled to civilian clothing of his choice but only to reasonably clean and suitable clothing at trial.
Furthermore, during voir dire, the defendant's attorney asked each potential juror if he would be prejudiced toward the defendant because of the defendant's wearing prison clothes. Those jurors who indicated that they would be prejudiced were excused for cause from the jury venire. The defendant effectively eliminated, without legal prejudice to him, the probability of prejudice against him for appearing in prison clothes.
Therefore, we find no error in the defendant's wearing prison clothes at trial.
ASSIGNMENT OF ERROR NO. 2
The defendant contends that the trial court erred in denying his motion to quash the multiple bill on the grounds that it was untimely filed. The defendant was convicted on December 4, 1986, but the multiple bill was not filed until the date of sentencing on March 2, 1987, approximately three months later.
LSA R.S. 15:529.1 does not impose a specific prescriptive period in which the district attorney must act after he knows that the defendant has a prior record. However, the Supreme Court has maintained that the habitual offender statute does not *1364 allow an indefinite time in which a D.A. may file a multiple bill once such information is available. State v. McQueen, 308 So.2d 752 (La.1975). The court, in McQueen, held that La.C.Cr.P. art. 876, which provides that the sentence shall be imposed without unreasonable delay, also governs the time within which a D.A. shall file a multiple offender bill. Examining the same issue in another case, the court held that the D.A. must file the multiple bill within a reasonable time after the prosecution knows that the defendant has a prior felony record. (Emphasis added.) State v. Bell, 324 So.2d 451 (La.1975).
In the instant case, the multiple bill was filed on the same day sentence was imposed. This was about three months after the original conviction. We find this to be a reasonable delay to file the multiple bill. Therefore, this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 3
The defendant contends that his right to a speedy trial was violated by the unreasonable delay between the filing of the multiple bill and the hearing on it. The multiple bill was filed on March 2, 1987 while the hearing was not held until April 26, 1988, one year and one month later.
The Louisiana Supreme Court has interpreted LSA R.S. 15:529.1(D) to require that multiple bill proceedings be completed before the defendant serves the sentence which is to be enhanced. State ex rel Williams v. Henderson, 289 So.2d 74 (La. 1984). The court reasoned that a defendant is entitled to know the full consequences of the verdict against him within a reasonable time.
In a factually similar case, the Third Circuit found no error when a delay occurred between the filing and the hearing on a multiple bill. In State v. Alexander, 503 So.2d 782 (La.App.3d Cir.1987), the court held that a two year lapse between the filing of the multiple bill and the subsequent hearing was not unreasonable. The defendant was notified, at his conviction, of the filing of the multiple bill, and the defendant was still incarcerated when the hearing was conducted two years later. Numerous continuances resulted in the delay. These were due to problems encountered in securing the defendant's presence at court from prison and to various post-conviction pleadings filed by the defendant.
In the instant case, the defendant was aware of the multiple bill filing on the day of sentencing, March 2, 1987. He was sentenced to ten years at hard labor. On April 26, 1988, the defendant was adjudicated a multiple offender and his sentence was enhanced to twenty years at hard labor with no benefit of parole. The defendant was still serving his original sentence at the time of the multiple bill hearing. The delays resulted from an inability to have the defendant transferred from prison to the courthouse and post-conviction pleadings filed on behalf of the defense. As our brothers in the Third Circuit concluded in Alexander, we find that the almost fourteen month delay was not unreasonable under these facts. Consequently, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 4PRO SE
The defendant contends that the trial court erred in denying his motion to represent himself at trial.
The right to self-representation was affirmed in Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The Supreme Court held that where the accused, weeks before trial, clearly and unequivocally declared to the trial judge that he wanted to represent himself and didn't want counsel, and the record affirmatively showed that the accused was literate, competent and understanding and that he was voluntarily exercising his informed free will, the trial judge deprived the accused of his constitutional right when he refused to allow him to represent himself.
Examining this issue, the Louisiana courts have upheld the right of self-representation. However, in State v. Hegwood, 345 So.2d 1179 (La.1977), the Louisiana Supreme Court held that when an accused waits until the morning of the trial to ask for new counsel or alternatively to represent himself, it is not a deprivation of a *1365 constitutional right when a reading of the record convinces the court that the motion is intended only as another delay tactic and not a clear and unequivocal assertion of his right to represent himself.
In the case at bar, the issue was addressed numerous times by the trial court. The defendant requested that he be allowed to represent himself at various stages of the criminal proceedings.
Applying the criteria outlined in Faretta requiring that the defendant be competent and literate, Mr. Spellman clearly met this threshold. The defendant has written numerous intelligent pro se briefs in this case. He was articulate when he addressed the court on this matter. Additionally, as in the Faretta case, the defendant first asked to represent himself long before the trial. Mr. Spellman made his initial motion to the court about five weeks prior to trial. However, in order to determine if the right to self representation was unconstitutionally denied, it is necessary to carefully review the facts at each of his requests.
At a motion to suppress hearing several weeks before trial, the defendant asked to represent himself. Mr. Spellman's request appeared to have stemmed from his dissatisfaction with his indigent defender. The court noted that the defendant had originally retained counsel and that he had appeared at initial proceedings with his retained lawyer as early as September 30, 1985. It was not until the suppression hearing, on October 27, 1986, that the defendant informed the court that his original lawyer was no longer on the case because of "financial disagreements.". He contended that the indigent defender who was appointed to represent him did not know anything about his case. The court warned Mr. Spellman that any attempt to merely create reversible error would not be tolerated. Subsequently, the trial judge offered to appoint new counsel, and the defendant agreed, waiving his right to self-representation. The Motion to Suppress hearing was continued until October 30, 1986, at which time the defendant was represented by a second court appointed lawyer.
On the morning of the trial, December 4, 1986, the defendant again requested that the court appoint new counsel or, alternatively, allow him to represent himself. In addition, he requested a continuance in which to establish an adequate defense. This request was made over fourteen months after the institution of prosecution.
In the present case, a reading of the record convinces this Court that the motion was properly denied. The defendant had retained counsel and, additionally, had two court-appointed attorneys, none of which met with his satisfaction. The court concludes that these motions were essentially delay tactics. Moreover, the defendant acquiesced in accepting new counsel at the motion to suppress hearing. We, therefore, find no error in the denial at trial of the defendant's motion for self-representation.
ASSIGNMENT OF ERROR NO. 5PRO SE
The defendant contends that the State failed to carry its burden as to knowledge and intent of the forgery. Thus, the defendant argues that the evidence viewed in a light most favorable to the prosecution is insufficient to support a guilty verdict of forgery. R.S. 14:72 reads as follows:
Forging is the false making or altering with the intent to defraud, of any signature to, or any part of, any writing purporting to have legal efficacy.
Issuing or transfering, with intent to defraud a forged writing, known by the offender to be a forged writing, shall also constitute forgery.
The defense, in its brief, acknowledges that the evidence presented at trial implies that the defendant knew the check might have been forged, but contends that the State didn't prove that the defendant actually forged it. However, LSA R.S. 14:72 indicates that the offender need not have actually signed the document to constitute the crime of forgery. Rather, the statute classifies as forgery the issuing or transferring of a document while having the knowledge that it was forged. This factor the defense admits in brief.
*1366 Thus, we find no merit in this argument, since the State proved the essential elements of the crime.
ASSIGNMENT OF ERROR NO. 6PRO SE
The defense contends that the trial court erred in denying its motion for mistrial based upon prejudicial remarks made by a testifying officer at trial. During the trial the following exchange occurred during the defense's cross-examination of Officer Hernandez:
Q. Why didn't you stop that car right then, if it was driving in a suspicious manner?
A. Because I wasn't absolutely sure that was the vehicle. The car had came out as a small Nova type car.
Q. As a matter of fact, you didn't think it was suspicious at all until you got into the bank, isn't that true?
A. No, I did think so. All I had to do was observe Mr. Spellman and I know he's a known criminal, known character.
MR. STEVENSON: Your honor, I ask for a mistrial.
THE COURT: No, the jury will disregard the remarks of Mr. Hernandez and cast it out of your mind. Motion for mistrial denied.
The Louisiana Supreme Court has held that a mistrial is a drastic remedy and is warranted only when trial error results in substantial prejudice to the defendant sufficient to deprive him of a fair trial. State v. Harris, 383 So.2d 1 (La. 1980); State v. Williams, 375 So.2d 364 (La.1979); State v. Heads, 370 So.2d 564 (La.1979). Prejudicial remarks made by police in either their capacity as witnesses or as court officials provides the basis for a mistrial under La.C.Cr.P. art. 771, if an admonition to the jury is not sufficient to insure the defendant a fair trial. State v. Goods, 403 So.2d 1205 (La.1981). However, the court, in Goods, held that, absent a showing of a pattern of unresponsive answers or improper intent by police or prosecutor, unsolicited, unresponsible references to other crimes by the defendant does not fall within purview of La.C.Cr.P. art. 771. Id. The court reasoned that it is in the discretion of the trial court to determine if an admonition to the jury would ensure the defendant a fair trial. Id.
In the case at hand, while this Court does not condone the statement made by Officer Hernandez, neither do we find the statement to be so prejudicial as to have warranted a mistrial. There was no pattern to the unresponsive answer that was found necessary in Goods to bring the remark within the scope of La.C.Cr.P. art. 771. Furthermore, the trial judge immediately admonished the jury to disregard the remark made by Officer Hernandez. We find no abuse of discretion in the trial court's decision that an admonition alone would insure the defendant a fair trial. Thus, we find this assignment of error to be without merit.
ASSIGNMENT OF ERROR NO. 7PRO SE
The defendant contends that the trial court erred in denying its motion to suppress the identification. The defendant alleges that he was identified by the bank teller in a single photo lineup. Therefore, the defendant argues that in-court identification created a substantial likelihood of misidentification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
The defendant however, mistates the facts. The witness was never shown a photo lineup for identification of the defendant. At the hearing, she merely identified an I.D. card as being the same one that the defendant had used to try to cash the forged check. She then made an in-court identification of the defendant as the person who had given her the forged check. The facts in this case did not create the substantial likelihood of misidentification that would taint the in-court I.D. of the defendant.
Furthermore, the defendant contends that the witness's vantage point was insufficient to accurately identify the perpetrator. The facts indicate that the defendant was in his automobile approximately 20 *1367 feet away from the witness with his window rolled down. Since the witness could have easily identified the defendant from twenty feet, we find no merit in this argument.
ASSIGNMENT OF ERROR NO. 8PRO SE
The defendant contends that the state offered insufficient evidence at the multiple bill hearing to prove that the defendant was a fourth felony offender under LSA R.S. 15:529.1.
To support the multiple bill, the State presented evidence of three prior felonies where a John Spellman pled guilty to each offense. To link the defendant to these crimes the State offered fingerprints of the offender in predicate offense # 1 and a photograph attached to the criminal record of John E. Spellman that resembled the defendant. We find that this evidence, by itself, does not prove that the same Mr. Spellman committed the prior felonies.
To prove that a defendant is a multiple offender, the State must first offer evidence of the prior convictions and then prove that the defendant is the same person who committed these prior felonies. State v. Chaney, 423 So.2d 1092 (La.1982). The Louisiana Supreme Court in State v. Curtis, 338 So.2d 662 (La.1976), established that evidence is insufficient to convict the defendant as a multiple offender when the only link between the defendant and the person who committed the prior felonies is identical names. The court stated that expert opinion comparing and identifying the fingerprints of the accused would be sufficient. Id.
In the case at hand, the State did not offer any expert testimony to link the fingerprints of the previously convicted felon to those of the defendant. Furthermore, nothing on the photograph that was presented connects the defendant to any of the predicate offenses. We find that insufficient evidence was presented to prove that the defendant was the same person who committed the prior felonies. Since the State failed to carry its burden of proof, the multiple bill sentence is vacated. The case is remanded to the trial court for a new multiple bill hearing.
CONCLUSION
For the above and foregoing reasons, we affirm the defendant's conviction. We vacate the multiple bill proceeding and remand the case for a new multiple bill hearing.
AFFIRMED IN PART; VACATED IN PART; REMANDED.