DOUCET, Judge.
This is an appeal from a conviction of Attempted Second Degree Murder and Armed Robbery.
On November 4, 1988, the defendant, Lionel B. Newton, and a companion entered the office of Julia Dauzat. The defendant robbed, pistol-whipped and shot Ms. Dauzat in the head. Acting on a tip, the police found the defendant later that day at the home of a friend. The defendant was arrested. Two guns and the money taken in the robbery were recovered.
After being advised of his constitutional rights, the defendant confessed to robbing, beating and shooting Julia Dauzat. Both Ms. Dauzat and her secretary, who. was present at the robbery, identified the defendant as the person who had robbed, beaten *980 and shot Ms. Dauzat, both in photographic line-ups and in open court.
After a trial before a twelve person jury, the defendant was convicted of Armed Robbery, a violation of La.R.S. 14:64 and of Attempted Second Degree Murder, a violation of La.R.S. 14:27 and 14:30.1. The defendant was sentenced to serve fifty (50) years on the Armed Robbery charge, and twenty-five (25) years on the Attempted Second Degree Murder charge. The sentencing judge specified that the sentences were to run consecutively, and that the time was to be served without benefit of probation, parole, or suspension of sentence. The defendant appeals.
MEDICAL REPORT
By his first assignment of error the defendant alleges that the trial court erred in failing to grant his motion for continuance of trial where the State failed to provide him with a certain medical report.
On December 19, 1989, the defendant moved for discovery of, among other things, “physical or mental examinations, and scientific tests or experiments, made in connection with or material to this case that are in the possession, custody, control or knowledge of the District Attorney, and which are intended for use at trial.” He further requested “any and all exculpatory evidence within the possession, custody, control or knowledge of the State, ... whether or not such exculpatory evidence is intended for use at trial.”
On the day of the trial, counsel for the defendant received from the prosecuting attorney a medical report concerning the treatment of Ms. Dauzat for the gunshot wound received at the hands of the defendant. The report included a history of the incident as given by the victim to her doctor.
After receiving the report the defense moved to exclude the evidence on the basis that it should have been given to him in response to his discovery motion and that it contained exculpatory evidence which should have been provided to him even in the absence of a discovery motion. After hearing arguments the trial judge issued a ruling prohibiting the State from using the report. The judge limited the doctor’s testimony to the facts of what he saw and discovered in treating Ms. Dauzat. He stated that the Doctor would not be allowed to testify as to any scientific analysis of those facts. The judge then recessed court for forty-five minutes to allow the defense to review the medical reports so that he could explain to the court how he would be prejudiced by not having been supplied with it at an earlier time. After court was reconvened the defense moved to continue so that he could get an expert to review the evidence. The trial judge denied the motion stating that the defense failed to show the necessary prejudice to its case. We find that the trial judge ruled correctly in this matter.
La.C.Cr.P. art. 729.5 provides the sanctions available for violation of the discovery articles, as follows:
“A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.”
The trial judge may select sanctions from among these options at his discretion. In order to obtain a reversal of his conviction based on a violation of the discovery articles, the defendant must show that he was prejudiced by the court’s adverse ruling on the sanction requested. State v. Arnaud, 412 So.2d 1013 (La.1982) and cases cited therein; State v. Laird, 548 So.2d 373 (La.App. 3rd Cir.1989). Our review of the record in this matter reveals no prejudice sustained by the defendant as a result of the trial judge’s refusal to continue the trial.
With regard to failure by the prosecution to provide allegedly exculpatory evidence, the Louisiana Supreme Court found *981 in State v. Johnson, 426 So.2d 95 (La.1983) at pages 98-99, that:
“Exculpatory evidence must be provided to the defense when it is material to guilt or punishment, regardless of the good faith or bad faith of the prosecutor. Brady v. Maryland, [373 U.S. 83] supra at 87, 83 S.Ct. [1194] at 1196 [10 L.Ed.2d 215 (1963) ]. In United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the United States Supreme Court delineated three tests of materiality, depending on the type of request presented by the defense to the prosecutor. This case falls under the third category of cases set forth in United States v. Agurs, since the request for information was for all Brady material. This court in State v. Willie, 410 So.2d 1019, 1031 (La.1982), discussed the analysis for this type of request when there is undisclosed evidence which may constitute Brady material.3 Reversible error results when the undisclosed evidence, considered in the context of the entire record, “creates a reasonable doubt that did not otherwise exist.” United States v. Agurs, supra 427 U.S. at 112-13, 96 S.Ct. at 2401-02.” (Footnote omitted.)
Considering the medical report in the context of the entire record, we find nothing in it which creates a reasonable doubt which did not otherwise exist. Therefore, this assignment of error is without merit.
SHACKLES
The defendant next argues that the trial court erred in failing to grant his motion for a mistrial because he was first brought into the courtroom wearing a prison uniform and shackles, and was later brought into court in street clothes and shackles.
La.C.Cr. Art. 775 provides in pertinent part that:
“... Upon motion of a defendant, a mistrial shall be ordered, and in a jury ease the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.”
In interpreting this article the courts have held that it is within the discretion of the trial judge to make the decision whether alleged prejudicial conduct in or outside a courtroom makes it impossible for a defendant to obtain a fair trial so that a mistrial must be granted. State v. Smith, 433 So.2d 688 (La.1983): State v. Ware, 478 So.2d 790 (La.App. 3rd Cir.1985).
While the courts have held that a defendant cannot be compelled to stand trial before a jury while dressed in identifiable prison clothes they have not gone so far as to prohibit the defendant from being before the jury in prison clothes. Rather, in reviewing this issue three factors are weighed to see whether reversible error has occurred. These facts are:
(1) Whether the clothes worn were easily identifiable as prison attire;
(2) Whether the defendant was actually compelled after objection to wear the prison clothes; and
(3) Whether the defendant was prejudiced by wearing the prison clothes.
State v. Fraley, 499 So.2d 1304 (La.App. 4th Cir.1986), modified 512 So.2d 856 (La.1987); State v. Spellman, 547 So.2d 1361 (La.App. 4th Cir.1989).
In this ease, there was no reason to believe that the defendant was seen by potential jurors while in prison clothes. Further, the courts have determined that the mere fact that a defendant appeared in restraints or may have been viewed by jurors or prospective jurors does not in itself constitute reversible error. The mere possibility that a defendant was prejudiced is insufficient to constitute reversible error. Rather, there must be a showing by the defendant that jurors did view defendant and that the viewing resulted in prejudice to the defendant which impacted upon the verdict. State v. Wilkerson, 403 So.2d 652 (La.1981).
In this case, there has been no such showing by the defendant. In fact, the trial judge articulated good reasons for *982 holding that no prejudice had occurred. As a result the record does not support the defendant’s contention. Therefore, this assignment of error lacks merit.
VICTIM STATEMENTS
The defendant next argues that the trial court erred in failing to grant defendant’s Motion for Mistrial based upon the state’s failure to make the defendant aware of a statement made by the victim which was exculpatory in nature until the day of trial.
Defendant argues that statements made by the victim were exculpatory because originally she stated to police she was standing up when she was shot and told the Assistant District Attorney that she was on the floor or kneeling when shot during her conversation with him in preparation for the trial. Defendant contends that the change in her story would be exculpatory in that it would raise an issue of the victim’s credibility and as to criminal intent. The defendant suggests that the statements withheld tend to show that the gun went off as they struggled to gain possession of it. Finally, the defendant asserts that the state in withholding the evidence which the defendant claims as exculpatory deprived the defendant of the right to make out a defense.
Defendant bases his arguments upon a supposition that the slight deviation in a witness’ statement of her position when shot somehow amounts to exculpatory evidence. Exculpatory evidence has been determined to be evidence which tends to disprove the defendant’s guilt of having committed the crime or negate his culpability for it in some way.
We find nothing exculpatory in this possible variation in the victim’s story. She was being pistol whipped by the defendant and was trying to get away. She was knocked to the floor by his blows and struggled to her knees and/or feet more than once. It is natural that she might not remember her exact position when the gun went off. Nothing in his confession suggests that the gun went off during a struggle for possession of it. As the defendant stated in his confession:
“A. Yeah and I hit her and she went down to the floor and I just....
Q. You just what?
A. I just shot her, you know, I shot her....”
Finally we find nothing in this evidence which would create a reasonable doubt which would not otherwise exist. State v. Johnson, supra.
Therefore, this assignment of error is without merit.
DOUBLE JEOPARDY
The defendant further contends that the trial court erred in instructing the jury to return a verdict on Armed Robbery and Attempted First Degree Murder, because this subjected him to double jeopardy. Therefore the defendant argues that the sentence for the Attempted Second Degree Murder should be vacated.
In State v. Jones, 525 So.2d 1149 (La.App. 3rd Cir.1988) and State v. Cotten, 438 So.2d 1156 (La.App. 1st Cir.1983), writ denied, 444 So.2d 606 (La.1984), as in this case, the victim was robbed at gunpoint then shot. In those cases, the courts held that because the same act constituted two offenses, the convictions of Attempted First Degree Murder and (Attempted) Armed Robbery constituted double jeopardy. In this case, as in those, the defendant was found guilty using the same factual circumstances to prove both offenses. Therefore, his conviction of both offenses constitutes double jeopardy. In cases where double jeopardy results in multiple sentences, the appropriate remedy is for the court to nullify the sentence for the less severely punishable offense of Attempted Second Degree Murder. State, ex rel. Adams v. R. Hilton Butler, Warden, La. State Penitentiary, 558 So.2d 552 (La.1990); State v. Jones, supra. Therefore, the conviction for Attempted Second Degree Murder is vacated. The conviction for Armed Robbery is affirmed.
EXCESSIVE SENTENCE
Finally, the defendant argues that the court imposed an excessive sentence without proper consideration of the sentencing guidelines. Since we have vacated *983 the conviction for Attempted Second Degree Murder, only the Armed Robbery sentence will be considered. On that charge, the defendant was sentenced to fifty years without benefit of probation, parole or suspension of sentence.
A trial judge has wide discretion in imposing sentences within the statutory limits and his decision should not be set aside as excessive absent a manifest abuse of that discretion. State v. Landos, 419 So.2d 475 (La.1982); State v. Square, 433 So.2d 104 (La.1983).
The sentencing guidelines of La.C. Cr.P. art. 894.1 provide the sentencing judge with criteria by which he can decide an appropriate sentence and oblige him to consider the criteria and enables the appellate court to measure whether a given sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979). However, the sentencing judge need not articulate every aggravating and mitigating circumstance, or read through a checklist of the items listed in order to comply with the requirements of La.C.Cr.P. art. 894.1. State v. Davis, 448 So.2d 645 (La.1984); State v. Vital, 491 So.2d 180 (La.App. 3rd Cir.1986).
The record in this case shows that the trial court ordered and reviewed a pre-sen-tence investigation and report, which was made a part of the record. The record shows that he considered both mitigating and aggravating factors in imposing sentence. The sentence is well supported by the record. Therefore, the sentence for Armed Robbery is affirmed as imposed.
CONCLUSION
As a result, the defendant’s conviction and sentence for Attempted Second Degree Murder are vacated. His conviction and sentence for Armed Robbery are affirmed.
REVERSED IN PART; AFFIRMED IN PART.